Manolis VOLYRAKIS,
Plaintiff-Appellant,

v.

M/V ISABELLE, et al.,
Defendants-Appellees.

No. 81–3049
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Feb. 26, 1982.

James M. Boone, Folsom, La., for plaintiff-appellant.

Chaffe, McCall, Phillips, Toler, Sarpy, Harvey G. Gleason, New Orleans, La., for defendants-appellees.

Before BROWN, POLITZ and WILLIAMS, Circuit Judges.

POLITZ, Circuit Judge:

Manolis Volyrakis, a seaman, filed suit against various defendants under the Jones Act, 46 U.S.C. § 688, for injuries he sustained while working on a vessel. The trial court granted motions to dismiss and motions for summary judgment sought by the defendants. Volyrakis notices an appeal as relates to all defendants but prosecutes his appeal only as against the owner of the vessel and the vessel's agent. Finding no error in the trial court's rulings, we affirm.

### Context Facts

Volyrakis, a Greek citizen, was injured while working as a member of the crew of the M/V ISABELLE, then located near New Orleans. The ISABELLE is of Greek registry and is owned by Cosmar Compania Naviera, S.A., a Panamanian corporation. The directors and officers of Cosmar are Greek citizens; no Cosmar shareholder is a citizen or resident of the United States. Cosmar has no office in the United States. Since her purchase by Cosmar, the ISABELLE had made three trips to the United States.

Celestial Maritime Corporation, a New York corporation, serves as an agent for the vessel. The function of Celestial was described by its president, Theofilos A. Vatis, as follows:

We are agents and brokers for oceangoing vessels; that is, we negotiate cargoes and periods of employment on behalf of shipowners from which activity we derive commission income and, in addition, we supply supervisory and agency services to vessels and other related services, be it in insurance areas or other operational areas, and from this we derive income on a retainer basis.

Celestial has no ownership interest in the ISABELLE, and is not the only company that seeks business for her. Celestial has no control over the hiring of crewmembers and makes no decisions regarding the operation of the vessel.

■ Volyrakis filed suit against the ISA-BELLE, against Cosmar, Cosmar's P & I insurer, The United Kingdom Mutual Steam Ship Assurance Association, Ltd., and against Celestial. Also named as defendants were Filia Maritime Agency, S.A., a Greek maritime agency which provided crew and other services to the ISABELLE, and Sunrise Shipping Agency, Inc., a New Orleans "protective" agent employed by Cosmar to assist the ISABELLE with its local needs. The court granted Celestial's motion for summary judgment, finding that Celestial was not a proper Jones Act defendant. The court granted Cosmar's motion to dismiss for reasons of forum non-conveniens after concluding that the Jones Act was not the proper law to apply to the case. The court also granted United Kingdom's motion to dismiss and granted summary judgment in favor of Sunrise Shipping and Filia.[1]

## I. *Celestial's Jones Act Employee Status*

Volyrakis argues that summary judgment in favor of Celestial was improper because there were contested material facts as to whether Celestial was his "employer" for purposes of Jones Act liability.

Summary judgment is appropriate where it appears from the pleadings, depositions, admissions, and affidavits, considered in the light most favorable to the non-moving party, that no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. *Cubbage v. Averett*, 626 F.2d 1307 (5th Cir. 1980). When the moving party has properly supported his summary judgment motion, the non-moving party must come forward with "significant probative evidence" showing that there is an issue regarding material facts. *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978). The non-movant may not simply rely on "vague assertions that additional discovery will produce needed, but unspecified facts ...." *S.E.C. v. Spence & Green*, 612 F.2d 896 (5th Cir. 1980), *cert. denied*, 449 U.S. 1082, 101 S.Ct. 866, 66 L.Ed.2d 806 (1981).

■ In the present case there is no dispute about the proper legal standard to be applied. The express language of the Jones Act requires that an employer-employee relationship exist before liability may be imposed. *Spinks v. Chevron Oil Co.*, 507 F.2d 216 (5th Cir. 1975), *clarified*, 546 F.2d 675 (5th Cir. 1977). As we stated in *Guidry v. South Louisiana Contractors, Inc.*, 614 F.2d 447, 452 (5th Cir. 1980):

> A Jones Act claim ... requires proof of an employment relationship either with the owner of the vessel or with some other employer who assigns the worker to a task creating a vessel connection ....

■ The employer need not be the owner of the vessel, *Barrios v. Louisiana Construction Materials Co.*, 465 F.2d 1157 (5th Cir. 1972), and independent contractors may be liable under the Act. *Guidry v. South Louisiana Contractors, Inc.*, 614 F.2d

---

[1] Volyrakis has waived any error in the dismissal of Sunrise and Filia by failing to prosecute his claims against them on appeal. Federal Rule of Appellate Procedure 28(a)(4) requires that appellant's brief contain an argument setting forth appellant's reasons and contentions. Appellant's brief here states only that "Reversal is further urged as to Sunrise and Filia to enable plaintiff to adjudicate fully all factual matters related to each of them in the controversy." This is insufficient to preserve the issue of their dismissal on appeal. *Larkin v. United Association of Journeymen*, 338 F.2d 335 (1st Cir. 1964), *cert. denied*, 380 U.S. 975, 85 S.Ct. 1337, 14 L.Ed.2d 270 (1965).

at 452; *Mahramas v. American Export Isbrandtsen Lines, Inc.*, 475 F.2d 165 (2d Cir. 1973). Further, a third person who borrows a worker may become the employer if the borrowing employer assumes sufficient control over the worker. *Ruiz v. Shell Oil Co.*, 413 F.2d 310 (5th Cir. 1969). Control is the critical inquiry.

█ Factors indicating control over an employee include payment, direction, and supervision of the employee. Also relevant is the source of the power to hire and fire. The control which is exercised must be substantial; the mere possibility of some control over the actions of an employee will not suffice to find an employer-employee relationship. *Guidry*, 614 F.2d at 455.

█ In the present case, Celestial was merely an agent for the ISABELLE. The uncontroverted facts indicate that, although Celestial did perform some general duties for the vessel, it exercised no control over her master and crew. Celestial was not responsible for the hiring of crewmen; this was done by a company in Piraeus, Greece. Celestial had no power to fire and made no decisions concerning the deployment and supervision of the crew. Celestial's absence of control over the vessel is reflected in Clause 2 of the General Authority section of the agency contract between Celestial and the ISABELLE, which states:

> Nothing in this Agreement is to be construed as giving the Agent [Celestial] control or possession of the Vessel or having any interest whatever in the business, profits, or liabilities resulting from the operation of the vessel.

In light of the foregoing, and considering appellant's failure to present any probative evidence indicating a conflict in material facts, we find that the trial court's grant of summary judgment in favor of Celestial was correct and affirm.

## II. Cosmar's Motion to Dismiss

█ The trial judge granted Cosmar's motion to dismiss based on forum non-con-

veniens, concluding the Jones Act was inapplicable. We agree.[2]

Whether the Jones Act applies to a given set of facts involves a question of choice of law. The Supreme Court directly addressed this issue in *Lauritzen v. Larsen*, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953), and *Hellenic Lines, Ltd. v. Rhoditis*, 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970).

In *Lauritzen*, the injured seaman was Danish, the ship was registered under the Danish flag, and the owner of the ship was Danish. The ship's articles were written in Danish and provided that the rights of crew members would be governed by Danish law and by the employer's contract with the Danish Seamen's Union, of which Larsen was a member. Larsen's injury occurred while the vessel was in the Havana harbor. On these facts, the Supreme Court held that the trial court erred in applying the Jones Act to the case. The Court listed the following seven factors as relevant in resolving the choice of law question: (1) place of the wrongful act; (2) law of the flag; (3) allegiance or domicile of the injured seaman; (4) place of the contract; (5) allegiance of the defendant shipowner; (6) inaccessibility of a foreign forum; and (7) law of the forum.

In *Rhoditis*, the injured seaman was a Greek citizen, the vessel was of Greek registry, the vessel's owner was a Greek corporation and the articles, which were signed in Greece, provided that Greek law and a Greek collective bargaining agreement applied and that all claims arising out of the employment contract were to be adjudicated by a Greek court. The injury occurred while the vessel was in United States waters. In affirming the trial court's application of the Jones Act to these facts, the Supreme Court first noted that the *Lauritzen* test was not a mechanical one, and the list of seven factors was not exhaustive. The Court held that the shipowner's "base

**2.** In its recent decision in *Piper Aircraft Company v. Reyno*, —— U.S. ——, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981), the Supreme Court reexamined the doctrine of *forum non con-*

*veniens* in light of its holding in *Gulf Oil Co. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).

of operations" was another important factor in determining whether the Jones Act was applicable. The Court found that Hellenic Lines, although a Greek corporation, actually based its operations in the United States. The Court predicated its conclusions on several facts: (1) Hellenic had its largest office in New York; (2) it had another office in New Orleans; (3) 95% of Hellenic Lines' stock was owned by a Greek citizen who had resided in the United States for 25 years; and (4) this United States resident managed the corporation out of the New York office. The Court also found relevant the fact that the vessel on which the seaman was injured engaged in regularly scheduled runs between various ports in the United States and the Middle East, Pakistan, and India, and that the entire income earned by the vessel was from cargo either originating or terminating in the United States.

In balancing the *Lauritzen* factors with these additional considerations the Supreme Court concluded:

We see no reason whatsoever to give the Jones Act a strained construction so that this alien owner, engaged in an extensive business operation in this country, may have an advantage over citizens engaged in the same business by allowing him to escape the obligations and responsibility of a Jones Act "employer." The flag, the nationality of the seaman, the fact that his employment contract was Greek, and that he might be compensated there are in the totality of the circumstances of this case minor weights in the scales compared with the substantial and continuing contacts that this alien owner has with this country.

398 U.S. at 310, 90 S.Ct. at 1734.

■ In the present case, the *Lauritzen* factors strongly favor the application of Greek law. The vessel sails under the Greek flag, Volyrakis is a Greek citizen, Cosmar is a Panamanian corporation owned and managed by Greeks, a Greek forum is not inaccessible, and the contract of employment selected Greece as the forum for resolution of all disputes arising out of the employment relationship.[3] That the injury occurred in United States waters is the sole factor in favor of applying United States law. This fact alone is not enough. As the Supreme Court stated in *Lauritzen*:

The test of location of the wrongful act or omission, however sufficient for torts ashore, is of limited application to shipboard torts, because of the variety of legal authority over waters she may navigate. These range from ports, harbors, roadsteads, straits, rivers and canals which form part of the domain of various states, through bays and gulfs, and that band of the littoral sea known as territorial waters over which control in a large, but not unlimited degree is conceded to the adjacent state.

345 U.S. at 583, 73 S.Ct. at 928.

Volyrakis argues that, notwithstanding the lack of contacts under *Lauritzen*, application of the Jones Act is proper because Cosmar has a substantial base of operations in the United States. Outside of assertions in Volyrakis' brief that are not supported by the record,[4] the only connection that Cosmar has with the United States is through Celestial. Considering the evidence in the light most favorable to Volyrakis, the non-mover, the record reflects that a Greek citizen, Phostiropoulos, is the president of Cosmar and has an ownership interest. Phostiropoulos is the representative of Mikofo, a Liechtenstein corporation which owns 49% of the stock in Celestial;

---

3. Although it is conceded that this factor carries little weight on the choice of law scale when dealing with seamen's employment contracts due to the disparity in bargaining power between seaman and employer, *Fisher v. Agios Nicholaos V*, 628 F.2d 308 (5th Cir. 1980); 1 G. Gilmore & C. Black, The Law of Admiralty, 476 (2d ed. 1975), it is nonetheless one factor to be considered.

4. Appellant states in his brief that Cosmar is headquartered in New York, that Cosmar's president, Phostiropoulos, has an office in New York, and that Cosmar's New York office was responsible for hiring and firing crewmembers. There is no evidence whatsoever in the record to support these allegations.

he is also one of the three directors of Celestial. This is not sufficient to constitute a substantial base of operations. Celestial is not the alter ego of Cosmar. The two corporations are independent entities engaging in related business activities. Celestial is merely an agent of the ISABELLE, assisting the vessel by obtaining supplies, arranging charters, and procuring contracts for cargo. Based on these connections, we cannot say that Cosmar has a substantial base of operations in the United States.

Volyrakis' reliance on the Second Circuit's decision in *Antypas v. Cia. Maritime San Basilio, S. A.*, 541 F.2d 307 (2d Cir. 1976), is misplaced; that case is factually different. In *Antypas*, the owner of the vessel was a Panamanian corporation, the entire stock of which was owned by United States citizens. In addition, during 1972 the vessel on which the seaman was injured operated alternatively on two liner services, one from the United States to Europe and back and the other from the United States to the Far East and back. The operation of the vessel was conducted by a New York corporation, all of the stock of which was owned by American citizens. Although there were other connections which, considered together, led the Second Circuit to conclude that the Jones Act applied, the foregoing facts differentiate *Antypas* from the case now before us.

Volyrakis also relies heavily on our recent decision in *Fisher v. Agios Nicholaos V*, 628 F.2d 308 (5th Cir. 1980). In *Fisher*, the seaman was a citizen of Greece, he was hired in Greece, the vessel was registered in Greece, and it was owned by Valsley Maritime, Ltd., a Liberian corporation. The vessel was operated by a Panamanian corporation. The seaman was killed while fighting a fire on the vessel as it was docked in Beaumont, Texas. We held that, although the vessel owner made a strong case for the application of Greek law, the trial court could apply the Jones Act to the case since the vessel had a substantial base of operations in this country. We noted the following considerations: (1) the vessel at issue was the only vessel owned by defendant;

(2) after its purchase, the vessel proceeded directly from Spain to the United States without a cargo; (3) the vessel's first cargo voyage under her new owner was to carry corn from Beaumont to the Soviet Union; and (4) the vessel was purchased for the purpose of that trade. We distinguished *Fisher* from previous decisions because the vessel's "entire business activity prior to the accident" was in the United States. *Id.* at 318. The *Fisher* decision is inapplicable to appellant's case.

■ The mere fact that a vessel periodically visits this country is not enough to merit application of the Jones Act. That point was considered by the Supreme Court in *Lauritzen v. Larsen*, where, in rejecting the very argument that appellant advances here, the Court stated:

Respondent places great stress upon the assertion that petitioner's commerce and contacts with the ports of the United States are frequent and regular, as the basis for applying our statutes to incidents aboard his ships. But the virtue and utility of sea-borne commerce lies in its frequent and important contacts with more than one country. If, to serve some immediate interest, the courts of each were to exploit every such contact to the limit of its power, it is not difficult to see that a multiplicity of conflicting and overlapping burdens would blight international carriage by sea. Hence, courts of this and other commercial nations have generally deferred to a non-national or international maritime law of impressive maturity and universality .... Maritime law, like our municipal law, has attempted to avoid or resolve conflicts between competing laws by ascertaining and valuing points of contact between the transaction and the states or governments whose competing laws are involved. The criteria, in general, appear to be arrived at from weighing of the significance of one or more connecting factors between the shipping transaction regulated and the national interest served by the assertion of authority. It would

not be candid to claim that our courts have arrived at satisfactory standards or apply those that they profess with perfect consistency. But in dealing with international commerce we cannot be unmindful of the necessity for mutual forbearance if retaliations are to be avoided; nor should we forget that any contact which we hold sufficient to warrant application of our law to a foreign transaction will logically be as strong a warrant for a foreign country to apply its law to an American transaction.

345 U.S. at 581–82, 73 S.Ct. at 928.

The trial court correctly concluded that the Jones Act was inapplicable. The judgment of the trial court is, in all respects, AFFIRMED.