433 So.2d 281 (1983)
Symeon SYMEONIDES, Representative of the Estate of Frangiskos Hajigeorgiou
v.
COSMAR COMPANIA NAVIERA, S.A., et al.
No. 82 CA 0706.
Court of Appeal of Louisiana, First Circuit.
May 17, 1983.
Rehearing Denied June 29, 1983.
*282 John W. Degravelles, Paul H. Due, John C. Caskey, Baton Rouge, for plaintiff-appellee Symeon Symeonides, etc., et al.
L. Havard Scott, III, Harvey G. Gleason, J. Dwight LeBlanc, Jr., Kenneth J. Servay, New Orleans, for defendant-appellant Cosmar Compania Naciera, S.A., et al.
Before COVINGTON, LANIER and ALFORD, JJ.
ALFORD, Judge.
This is an appeal from a judgment of the Nineteenth Judicial District Court, Parish of East Baton Rouge, awarding damages for the wrongful death of a Greek seaman who was fatally injured on a Greek vessel moored in an American port at the time of *283 the accident. Symeon Symeonides, initially as court appointed curator and later substituted as succession representative for decedent's estate, filed suit under the Jones Act and general maritime law. Named as defendants were Cosmar Compania Naveria, S.A. (owner of the vessel), Celestial Maritime Corporation (American agent of the vessel), and The United Kingdom Mutual Steam Ship Assurance Association (Bermuda) Limited (insurer of the vessel).
The decedent, Fragiskos Hajigeorgiou, a citizen of Greece, was hired in Greece as a seaman for the M/V ISABELLE and joined the vessel in Baltimore, Maryland, on January 9, 1980. The record in this case reflects that the M/V ISABELLE is a Greek flag vessel, owned by appellant Cosmar, a Panamanian corporation. Cosmar in turn is owned by Micofo Anstalt Va Duz Liechtenstein, a Liechtenstein corporation. The vessel had been purchased in either December, 1979, or January, 1980, and proceeded, after repairs, to port at Darrow, Louisiana (the site of the accident), to take on a cargo destined for Rotterdam. The ISABELLE was the only vessel owned by Cosmar at that time.
In the early morning hours of February 2, 1980, Frangiskos Hajigeorgiou was assisting in releasing the stern mooring lines of the ISABELLE as she was being prepared to leave anchor in the Mississippi River at Darrow, Louisiana. Decedent and Second Officer Manolis Volyrakis, who was in charge of the stern operation, were suddenly hit by a mooring line which slipped, injuring both. The men were taken to the Our Lady of The Lake Hospital in Baton Rouge. Decedent remained in the hospital for some 118 days until his death on May 30, 1980. Second Officer Volyrakis was subsequently released. For reasons to become apparent later in this opinion, we note that Volyrakis filed suit in federal district court, which suit was eventually dismissed on the ground of forum non conveniens. Volyrakis v. M/V ISABELLE, 668 F.2d 863 (5th Cir.1982).
Appellants maintain that the trial judge erred (1) in not transferring venue to Greece, (2) in imposing the sanctions of striking their exceptions of improper venue, lack of jurisdiction, and their defenses under Greek law, (3) in not applying Greek law, (4) in awarding excessive damages, (5) in allowing the deposition of Second Officer Volyrakis into evidence, and (6) in not finding decedent contributorily negligent.
Shortly after this suit was filed, appellants removed the case to the United States District Court for the Middle District of Louisiana. Appellee subsequently filed a motion to remand the matter back to the Nineteenth Judicial District Court, Parish of East Baton Rouge. The motion was granted on August 12, 1980. Symeonides v. Cosmar Compania Naveria, S.A., 494 F.Supp. 240 (M.D.La.1980).
We note at the outset that appellants do not contest what they term overall jurisdiction, which we take to mean subject matter jurisdiction, in that the vessel owner was conducting business within the navigable waters of Louisiana when the accident occurred.
Prior to answering appellee's petition, appellants filed exceptions of improper venue and lack of jurisdiction. Appellants maintained that the court did not have what they styled Jones Act jurisdiction over the persons of defendants. It is apparent from the exceptions that appellants were urging that the court decline jurisdiction over the matter based on a forum non conveniens argument.
In support of the exceptions, appellants submitted the affidavit of Liverios Sterghiou, Secretary and Cashier of the Board of Directors of Cosmar, which contained a copy of decedent's employment contract, along with various other documents. In his affidavit, Mr. Sterghiou stated, among other things, that no stockholders or officers of Cosmar were U.S. citizens.
The exceptions were set for hearing on July 17, 1981, the same day as appellee's first motion to compel answers to interrogatories propounded on November 5, 1980. At the conclusion of the hearing, the trial judge overruled appellants' exceptions without giving reasons and granted appellee's *284 motion to compel. Appellants were ordered to answer the interrogatories on or before September 1, 1981. Appellants maintain that the trial judge erred in overruling the exceptions when the above mentioned affidavit established that no American interest was involved in Cosmar. We disagree and note several problems in this argument.
First, when a vessel owner, such as Cosmar, asks the court to decline jurisdiction, it subjects itself to the obligation of furnishing all information pertinent to a decision of the motion. Lekkas v. Liberian M/V Caledonia, 443 F.2d 10 (4th Cir.1971). Second, in Blanco v. Carigulf Lines, 632 F.2d 656, 658 (5th Cir.1980), the Fifth Circuit observed that:
"Plaintiff is not required to rely exclusively upon a defendant's affidavit for resolution of the jurisdictional issue where that defendant has failed to answer plaintiff's interrogatories specifically directed to that issue. To hold otherwise would permit an advantage to a defendant who fails to comply with the rules of discovery."
The pertinence of the information sought in appellee's interrogatories numbers 19 and 20 are at the forefront of the dispute in this case. Through these two interrogatories, appellee sought to discover the names, addresses and citizenships of the ultimate beneficial ownership interests of Cosmar and others involved with the ISABELLE. When the interrogatories were finally answered, appellants' combined answer stated, "The stockholders, officers, and directors of the Cosmar Compania Naveria are all non-U.S. citizens. Defendants have no other information concerning the charterer, manager, and operator." After considerable delay, the answer was supplemented to read, "Cosmar Compania Naveria, S.A. is solely owned by Micofo Ansalt Va Duz Leichenstein (sic). The Anstalt is controlled by two trustees in Zurich, Switzerland."
Appellants maintain that these responses adequately answer the inquiry given that the information is without relevance under the United States Supreme Court case of Lauritzen v. Larsen, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953). It appears to this court that what appellants are ultimately urging is that the trial judge erred in not transferring the case pursuant to forum non conveniens because, as they contend, he erred under the Lauritzen test[1] in determining that American law applied. This all in turn leads to the specification of error dealing with the appropriateness of the sanction imposed which resulted in appellants' exceptions as to venue and jurisdiction and the applicability of Greek law being stricken.
We are of the opinion that the information sought is both relevant and discoverable. In an effort to clarify these issues we note that choice of law factors are relevant to, though not determinative of, whether admirality suits should be dismissed on forum non conveniens grounds.[2]Fisher v. Agios Nicolaos V, 628 F.2d 308 (5th Cir.1980). U.S. cert. denied, 454 U.S. 816, 102 S.Ct. 92, 70 L.Ed.2d 84, U.S. rehearing denied, 454 U.S. 1129, 102 S.Ct. 982, 71 L.Ed.2d 117.
In Hellenic Lines, Limited v. Rhoditis, 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970), the United States Supreme Court *285 had occasion to reconsider the choice of law test developed in Lauritzen, and noted that the test was neither exhaustive nor to be applied mechanically. The court went on to note that another factor of importance in determining the applicability of the Jones Act was the base of operations of the shipowner. Additionally, the court noted that there may well be other factors important in these considerations. The information sought in appellee's interrogatories could have conceivably brought to light facts which dispute appellants' allegations that there were no American interest in Cosmar and ultimately in the ISABELLE. It is hard to imagine why appellants would so forcefully resist divulging this information if, as they contend, there were no American interests involved.
Appellants mistakingly rely on Chiazor v. Transworld Drilling Company, Ltd., 648 F.2d 1015 (5th Cir.1981), U.S. cert. denied, 455 U.S. 1019, 102 S.Ct. 1714, 72 L.Ed.2d 136, for the proposition that there is no need to look behind the foreign corporate structure where the majority of Lauritzen-Rhoditis factors clearly indicate that foreign law is applicable. The court in Chiazor noted that the importance of certain of the Lauritzen-Rhoditis factors will vary depending on the circumstances of each case. In Chiazor, the court distinguished the situation it was faced with, a submersible drilling rig, from that faced by the Rhoditis court, a true maritime vessel. Given that we are faced with here, as in Rhoditis, a true maritime vessel, we feel the foreign-corporate structure of Cosmar is of significant relevance.
Regardless of why the information requested was withheld, the fact remains that it was withheld in direct disobedience of court orders to produce it. As a result of this, the trial court on May 28, 1982, less than one month prior to trial, pursuant to LSA-C.C.P. art. 1471, imposed the sanction of striking appellants' exceptions of improper venue, lack of jurisdiction, and their defense of application of Greek law. Appellants maintain that the action of the trial court was an abuse of discretion in that the interrogatories were adequately answered. In that we have determined that the information was relevant and discoverable, and further that appellants' answers were not responsive to the specific requests made, we now turn to other concerns necessary to affirm the imposition of the sanctions.
"It has long been recognized that a state court, having concurrent jurisdiction with the federal courts as to in personam admirality claims, is free to adopt such remedies and attach to them such incidents as it sees fit so long as it does not attempt to modify or displace essential features of the substantive maritime law."
Lavergne v. The Western Company of North America, Inc., 371 So.2d 807, 810 (La.1979). We must, therefore, determine if the application of LSA-C.C.P. art. 1471, which provides the state sanctions for failure to comply with discovery in any way modifies or displaces any essential features of substantive maritime law. We find that it does not. The Louisiana Code of Civil Procedure was patterned after the Federal Rules of Civil Procedure. Federal Rule of Civil Procedure 37(b) provides essentially the same sanctions as those found in LSA-C.C.P. art. 1471 and, therefore, the application of the Louisiana article in no way affects substantive maritime law.
In Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982), the United States Supreme Court had occasion to consider the application of sanctions under Federal Rule of Civil Procedure 37(b)(2). At 2107 the Court noted:
"Rule 37(b)(2) contains two standards one general and one specificthat limit a district court's discretion. First, any sanction must be `just'; second, the sanction must be specifically related to the particular `claim', which was at issue in the order to provide discovery."
Having noted above that the Louisiana rules of civil procedure were patterned after the federal rules, it is no surprise that LSA-C.C.P. art. 1471 contains the same standards as Federal Rule 37(b)(2).
*286 In Ireland, the discovery sought dealt with the issue of whether the court had personal jurisdiction over the defendant. In reviewing the decision of the district court to impose the Rule 37(b)(2) sanction of treating as established the personal jurisdiction over the defendant for failure to comply with discovery, the Supreme Court reached its decision that the sanction was just based on the following four factors: (1) defendants continued delay and obvious disregard of court orders; (2) defendants repeated failure to comply with their agreements regarding discovery orders within the specified time periods; (3) the fact that plaintiff's allegations that the court had personal jurisdiction over defendants were not frivolous, and thus the attempted use of discovery to substantiate the claims was not an abuse of the judicial process; (4) defendants had ample warning that their continued failure to comply with discovery would lead to the sanctions.
When the factors enunciated in Ireland are applied to the facts of this case, it becomes apparent that the trial judge's imposition of sanctions was just. First, appellants' continued delay and obvious disregard for court orders is evidenced in the record. Appellee's first set of interrogatories were propounded on November 5, 1980. Appellants were ordered by the court to answer them by September 1, 1981, which they failed to do. Answers were not forthcoming until March 31, 1982, and when the answers were received, many were completely unresponsive or evasive. In fact, appellants never did provide the names and addresses of the ultimate beneficial owners of Cosmar, as requested in interrogatories 19 and 20.
Second, there can be no doubt that appellants repeatedly failed to comply with their agreements regarding answering the discovery interrogatories within the times specified by the Court and in their formal agreements with counsel for appellee. We feel it unnecessary to list all of the instances in which these agreements were breached, but we note that the September 1, 1981, deadline was not met. Additionally, as noted above, the agreement reached between counsel in open court as reflected by the court minutes of May 7, 1982, was also breached. It was this last breach which directly lead the trial court to impose the sanctions on May 28, 1982, less than one month before the scheduled trial of this matter.
We feel it necessary to note at this point that appellants did not object to the relevancy of these interrogatories until they sought writs on the imposition of the sanctions to this court and to the Louisiana Supreme Court, both of which were denied. The record clearly shows that appellants continually refused to obey court orders and their agreements through counsel.
The third factor in Ireland, as it relates to this case, requires a determination of whether appellee's allegations that venue and jurisdiction were proper, along with the allegation that American law was applicable, were frivolous. We find that they were not. As noted earlier in this opinion, the questions which remain unanswered could have had significant influence on this case. We see no abuse of judicial process in attempting to substantiate these claims through discovery.
The last Ireland factor to be considered is the sufficiency of the warning appellants had prior to the sanctions being imposed. Unlike in Ireland, the record does not reflect that the trial judge ever actually threatened appellants with the sanctions in so many words. In our opinion however, this does mitigate the fact that appellants had sufficient warning. It should be noted that appellee moved for, and was granted, a preliminary default judgment, which through agreement of counsel was later abandoned. Appellee again brought a motion for default, and alternatively, sanctions, which was forestalled through the intervention of the trial judge in an effort to resolve the discovery dispute between the parties. When appellants breached this open court agreement, appellee brought a third motion for default and alternatively for sanctions. Appellants' counsel, in a letter to appellee's counsel, in fact acknowledged *287 that sanctions were possible stating that he was cognizant of the fact that if his clients did not divulge the information their defenses under Greek law would be lost. We feel the record demonstrates that appellants had sufficient warning, and the imposition of sanctions was just.
The second standard noted by the court in Ireland, that the sanction must be specifically related to the particular claim which was at issue in the order to provide discovery has also been met. The intertwined considerations posed by appellants' venue, jurisdiction and choice of law objections, and which appellee was attempting to investigate through discovery are directly related to the sanctions imposed. Therefore, in that both the general and specific standards of LSA-C.C.P. art. 1471 have been met, we find that the sanctions were proper.
As noted earlier in this opinion, Second Officer Volyrakis, who was also injured in the accident, filed suit in federal district court. Appellants place great emphasis on the fact that that case was transferred to Greece based on forum non conveniens. We do not feel that this case is dispositive of the one before the court because it is distinguishable given the sanctions imposed in this case. Perhaps if discovery had been complied with, the trial judge in this case would have reached the same result as the Volyrakis court. The key distinction between these two cases is that appellants lost their right to question venue, jurisdiction, and American law through their knowing and blatant disobedience of valid court orders.
Appellants maintain that without the deposition of Second Officer Volyrakis, which they maintain should not have been allowed into evidence, there is insufficient evidence to affirm the trial court's finding of negligence and unseaworthiness. We disagree.
The deposition was noticed to be taken at the Hilton Hotel in Athens, Greece at 2:30 p.m. on June 1, 1982. It is apparent that a misunderstanding arose as to possible changes in the location of the deposition. Both appellant and appellee put on evidence as to what the actual understanding was, both versions of which differed greatly.
The record reveals that the following took place. Counsel for appellee waited for approximately one-half hour after the scheduled time before beginning because counsel for appellants had not arrived. Counsel for appellants had gone to another hotel, mistakenly believing that the deposition had been changed. Shortly after the deposition had begun, counsel for appellant appeared. Upon entering, counsel for appellant asked to inquire into the qualifications of the court reporter and interpreter. In that the deposition had begun, counsel for appellee asked that he wait until cross examination for the inquiry. After questioning the reporter, counsel for appellant objected to the use of this reporter on the grounds that she was not qualified under Greek law to administer oaths, and was not qualified in the United States as a court reporter although she had been a free lance foreign reporter for a number of years.
It did not become apparent to counsel for appellant until shortly before trial that the court reporter had not administered the oath, rather, counsel for appellee had administered the oath. Counsel for appellant then moved to suppress the deposition. The motion to suppress was denied. Counsel for appellee testified that he and the court reporter discussed the procedure to be followed, in that the reporters in Greece did not administer oaths and decided that counsel would administer the oath.
In deciding to deny the motion to suppress, the trial judge after hearing the testimony, stated that he felt the proper safeguards had been employed and that it was not in the interest of justice to suppress it. In agreeing that no injustice resulted, we note that by the time counsel for appellant entered the deposition, Mr. Volyrakis had only been asked his name and citizenship. Counsel for appellant was therefore present for essentially the entire deposition to note his objections for the record.
*288 The trial judge, based principally on the expert testimony, found that appellee had met the burden of proof under both Jones Act negligence and general maritime unseaworthiness. A controversy existed in that there were two versions of how the mooring equipment was being used at the time of the accident. The key factor involved in both versions however was that the stern right winch had been used in conjunction with the fairhead, which according to appellee's experts, was an unsafe procedure. We note that in admiralty cases tried before a judge, findings of fact are binding unless clearly erroneous. Kratzer v. Capital Marine Supply, Inc., 645 F.2d 477 (5th Cir.1981). We find nothing clearly erroneous in the trial judge's determination.
Appellants next allege that the trial judge erred in not finding that decedent was contributorily negligent. They stress that the experts in this case all testified that it was dangerous to stand inside the "bite" of a line that has tension on it. They further rely on the Volyrakis deposition wherein he states that he warned the crew working under him to stay on the opposite side of the ship. We note, however, that Mr. Volyrakis who was also injured, could not remember the exact moments prior to the accident and stated that the crew was very busy, and thus, decedent may have been just passing by the line when the accident happened. Questions of proximate cause and contributory negligence are treated as questions of fact in admiralty cases and, thus, subject to the clearly erroneous standard on review. Kratzer. We see nothing clearly erroneous in the trial judge's determination that decedent was not contributorily negligent.
We agree with appellant's contention that there is nothing in the record to show any liability on the part of Celestial Maritime Corporation (American agent for the ISABELLE). Under both the Jones Act and general maritime law, the employer of the seaman and the vessel owner may be liable for negligent injury or death, or injury or death resulting from the unseaworthiness of the vessel. Guidry v. South Louisiana Contractors, Inc., 614 F.2d 447 (5th Cir.1980). There is simply nothing in the record to indicate that appellant Celestial stood in either of these two capacities.
We do not, however, agree with appellants' argument that judgment cannot be cast against The United Kingdom Steam Ship Assurance Association (Bermuda) Limited (who entered into a protection and indemnity agreement with Cosmar). It has been held that protection and indemnity insurance is subject to the Louisiana Direct Action Statute. Olympic Towing Corporation v. Nebel Towing Company, 419 F.2d 230 (5th Cir.1969), U.S. cert. denied, 397 U.S. 989, 90 S.Ct. 1120, 25 L.Ed.2d 396.
Appellants additionally contend that the amount of damages awarded was excessive for several reasons. The trial court awarded damages to the decedent's mother and retarded brother for loss of society and support, plus decedent's pain and suffering, interest thereon from February 2, 1980, and costs.
Appellants first maintain that decedent's retarded brother, who was wholly dependent on him, is not entitled to any award for loss of society or support. This argument is simply without merit. In SeaLand Services, Inc. v. Gaudet, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974), the United States Supreme Court noted that a decedent's dependents under the maritime wrongful-death remedy may recover damages for their loss of support and society. There can be no doubt from the record that decedent's brother was dependent on decedent for both society and support.
Appellants next argue that the trial judge erred in his method of computing the loss of support awards. We see nothing clearly erroneous in the method employed by the trial court. The trial judge stated that he felt that neither of the experts gave unquestionable methods by which to reach a determination, and thus he used portions of each theory in making the awards. The amounts awarded, $53,556.25 to each of the two dependents, are not so high as to be clearly erroneous.
*289 The next argument urged by appellants is that the trial judge abused his discretion in awarding $100,000.00 for decedent's pain and suffering. Appellants maintain that there can be no recovery for unconscious pain and suffering, and that given decedent's condition, he never experienced pain, as we know it. They rely heavily on the testimony of Dr. William A. Fisher, decedent's treating neuro-surgeon, who testified at length as to decedent's condition prior to death. There is, however, evidence in the record which disputes Dr. Fisher's opinions, and which indicates to this court that decedent did, in fact, experience considerable pain prior to his death.
Finally, appellants maintain that the trial judge abused his discretion in awarding prejudgment interest from the date of judicial demand. We see no abuse in this award. As conceded by appellants, it is a matter within the discretion of the trial court.
Therefore, for the foregoing reasons, the judgment of the trial court is affirmed as to appellants, Cosmar Compania Naveria, S.A. and The United Kingdom Mutual Steam Ship Assurance Association (Bermuda) Limited, and reversed as to appellant Celestial Maritime Corporation.
AFFIRMED IN PART AND REVERSED IN PART.
NOTES
[1] In Lauritzen, the Supreme Court noted that the following factors were important in determining whether to apply American or foreign law:

1) Place of the wrongful act
2) Law of the flag
3) Allegiance or domicile of the injured
4) Allegiance of the defendant shipowner
5) Place of the contract
6) Inaccessibility of foreign forum
7) Law of the forum
[2] In Gulf Oil Corporation v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), the Supreme Court gave the following factors as the important considerations in determining whether a case should be dismissed for forum non conveniens:

1) Relative ease of access to sources of proof
2) Availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses.
3) Possibility of view of premises
4) Enforceability of judgment
5) Other practical problems or considerations