**Linda Ann ISROW, Plaintiff,**

v.

**"A MODO MIO," A 57' AZIMUT SPA-AVIGLIANA PLEASURE VESSEL, OFFICIAL # D1060003, Robert Kehrig and Rosalie Kehrig, jointly and severally, Defendants.**

No. 99–CV–75270–DT.

United States District Court,
E.D. Michigan,
Southern Division.

Aug. 9, 2000.

George T. Fishback, Det., MI, Bruce Beaton, Marine City, MI, for plaintiff.

Thomas M. Lizza, Grosse Pointe, MI, for defendants.

## OPINION

DUGGAN, District Judge.

On August 7, 1998, while cleaning Defendants Robert and Rosalie Kehrig's yacht, the "A Modo Mio," Plaintiff Linda Ann Isrow fell through an open hatch door in the master stateroom, sustaining various injuries. On October 27, 1999, Plaintiff filed an admiralty/maritime action against Defendants, alleging that Defendants had failed to (1) provide a safe place to work in violation of the Jones Act, 46 U.S.C. app. § 688, or in the alternative,

general maritime law (Count I), (2) provide a seaworthy vessel in violation of general maritime law (Count II), (3) pay Plaintiff's "maintenance and cure" benefits in violation of general maritime law (Count III), and (4) pay Plaintiff's damages, thereby entitling her to a maritime lien on the "A Modo Mio" (Count IV).

This matter is currently before the Court on Defendants' motion for partial summary judgment with regard to Plaintiff's status as a "seaman" under the Jones Act. Oral argument regarding Defendants' motion was heard on August 7, 2000. For the following reasons, Defendants' motion shall be granted.

### Background

For the past fifteen years, Plaintiff has been employed as a house cleaner, cleaning two to three houses per day, six days a week. (Isrow Dep. at 11–14). In 1995, Plaintiff was hired to clean Defendants' house in Algonac, Michigan.[1] (*Id.* at 18, 23). In 1997, Plaintiff's cleaning responsibilities were expanded to include Defendants' house in Mt. Clemens, Michigan, about once every other month, and their condominium at Mac & Rays Harbor in Harrison Township, Michigan, approximately once a month during June, July, and August. (*Id.* at 23–25).

Sometime prior to August of 1998, Defendant Rosalie Kehrig also asked Plaintiff to clean the Defendants' boat, the "A Modo Mio." On August 7, 1998, while cleaning the "A Modo Mio," Plaintiff fell through an open hatch in the master stateroom, suffering a broken ankle and torn rotator cuff. According to Plaintiff, she had only been on the "A Modo Mio" once or twice before the incident on August 7, 1998. (*Id.* at 20).

1. In her affidavit, Plaintiff avers that she has worked for Defendants "in excess of ten (10) years." (Isrow Aff. at 1). Plaintiff's deposition, however, indicates that she was hired by Defendants in 1995. (Isrow Dep. at 18).

2. In relevant part, the Jones Act provides: Any seaman who shall suffer personal injury in the course of his employment may, at

### Discussion

■ "The Jones Act provides a cause of action in negligence for 'any seaman' injured 'in the course of his employment.'" *Chandris, Inc. v. Latsis,* 515 U.S. 347, 354, 115 S.Ct. 2172, 2183, 132 L.Ed.2d 314 (1995) (quoting 46 U.S.C. app. § 688).[2] Defendants contend that they are entitled to partial summary judgment with regard to Plaintiff's right to proceed under the Jones Act because (1) Plaintiff is not an "employee" of Defendants and (2) Plaintiff is not a "seaman."

On a motion for summary judgment, the underlying facts "must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *accord Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Therefore, the moving party bears the initial burden of demonstrating the absence of evidence in support of the nonmoving party's claims. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

Once the moving party has sustained his burden, the nonmoving party must come forward with sufficient evidence to establish a genuine issue of material fact. The nonmoving party, however, "is required to do more than simply show that there is some 'metaphysical doubt as to the material facts.'" *Pierce v. Commonwealth Life Ins. Co.,* 40 F.3d 796, 800 (6th Cir.1994) (quoting *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356). The nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers

his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply.
46 U.S.C. app. § 688(a).

to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(e)).

"[T]here must be evidence on which the jury could reasonably find for the [nonmoving] party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate only when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

### 1. Plaintiff's "Employment" Status

Defendants first contend that they are entitled to partial summary judgment with respect to Plaintiff's Jones Act claim because Plaintiff was not an "employee" of Defendants at the time of the incident. According to Defendants, Plaintiff has admitted that she was "a self-employed cleaning person who worked the other 5 days cleaning houses for numerous individuals other than the Kehrigs." (Defs.' Br. Supp.Mot.Summ.J. at 4). Plaintiff, on the other hand, contends that she was an "employee" of Defendants for Jones Act purposes, citing the fact that "the equipment and cleaning materials used by [her] were supplied by her employers, the Kehrigs," and that "legally and for taxation purposes, [she] was aware that she was an employee of the Defendants." (Pl.'s Resp. at 5).

"The express language of the Jones Act requires that an employer-employee relationship exist before liability may be imposed." *Volyrakis v. M/V Isabelle,* 668 F.2d 863, 865 (5th Cir.1982), *overruled on other grounds by In re Air Crash Disaster Near New Orleans, La. on July 9, 1982,* 821 F.2d 1147 (5th Cir.1987). *See also Reeves v. Mobile Dredging & Pumping Co.,* 26 F.3d 1247, 1252–53 (3d Cir.1994). The existence of an employ-ment relationship is a question of fact that "turns upon the degree of control the alleged employer exerts over the employee." *Reeves,* 26 F.3d at 1253; *see also Volyrakis,* 668 F.2d at 866 ("Control is the critical inquiry."). Factors indicating control include "payment, direction, supervision, and discretion to hire and fire." *Id.* "The control which is exercised must be substantial; the mere possibility of some control over the actions of an employee will not suffice to find an employer-employee relationship." *Volyrakis,* 668 F.2d at 866.

The Court is satisfied that genuine issues of material fact exist with regard to whether an employer-employee relationship sufficient under the Jones Act existed between Plaintiff and Defendants. The facts indicate that Defendants had the discretion to hire, and presumably to fire, Plaintiff. Furthermore, to some degree Defendants supervised and controlled Plaintiff's work by directing which residences to clean, as well as the specific cleaning tasks to be completed. Moreover, the fact that Plaintiff also cleaned houses for a number of other individuals is not necessarily fatal to her Jones Act claim. "[I]t is … possible for a seaman to have more than one Jones Act employer, although only one could be sued as the employer responsible for the negligent act." *Reeves,* 26 F.3d at 1253 n. 8 (internal citations omitted).

Although the Court is satisfied that genuine issues of material fact exist with regard to whether Plaintiff had an "employment relationship" with Defendants, the Court shall nonetheless grant Defendant's motion for partial summary judgment because the Court is satisfied that Plaintiff is not entitled to status as a Jones Act "seaman."

### 2. Plaintiff's Status as a "Seaman"

Defendants assert that Plaintiff, while performing her cleaning duties aboard the "A Modo Mio," did not constitute a "seaman" under the Jones Act. Plaintiff, on the

other hand, contends that when viewed in a light most favorable to her, the facts of this case illustrate that she was working in the capacity of a seaman at the time of her injury.

Neither Plaintiff nor Defendant, however, have set forth or applied the correct test for determining an individual's status as a "seaman" under the Jones Act, as enunciated by the United States Supreme Court in *Chandris, Inc. v. Latsis,* 515 U.S. 347, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995).[3] In *Chandris,* the United States Supreme Court, resolving "the continuing conflict among the Courts of Appeals regarding the appropriate requirements for seaman status under the Jones Act," set forth a two-part test for determining whether an individual qualifies for seaman status. *Chandris,* 515 U.S. at 353, 115 S.Ct. at 2182.

■ According to the Supreme Court, there are two "essential" requirements for seaman status. First, " 'an employee's duties must contribut[e] to the function of the vessel or to the accomplishment of its mission.' " *Id.* at 368, 115 S.Ct. at 2190 (quoting *McDermott Int'l Inc. v. Wilander,* 498 U.S. 337, 355, 111 S.Ct. 807, 817, 112 L.Ed.2d 866 (1991)). Second, "a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature." *Id.*

■ As the Supreme Court's decision in *Chandris* clearly articulates, " 'seamen do not include land-based workers.' " *Chandris,* 515 U.S. at 358, 115 S.Ct. at 2185 (quoting *Wilander,* 498 U.S. at 348, 111 S.Ct. at 814). Jones Act coverage "depends 'not on the place where the injury is inflicted, . . . but on the nature of the seaman's service, his status as a member of the vessel, and his relationship as such to the vessel and its operation in navigable waters.' " *Id.* at 359–60, 111 S.Ct. 807 (al-

teration in original). According to the Supreme Court:

> It is well settled after decades of judicial interpretation that the Jones Act inquiry is fundamentally status based: Land-based maritime workers do not become seamen because they happen to be working on board a vessel when they are injured, and seamen do not lose Jones Act protection when the course of their service to a vessel takes them ashore.

*Id.* at 361, 115 S.Ct. at 2186.

■ The seaman inquiry is a mixed question of law and fact, and it often will be inappropriate to take the question from the jury. *Harbor Tug & Barge Co. v. Papai,* 520 U.S. 548, 554, 117 S.Ct. 1535, 1540, 137 L.Ed.2d 800 (1991). "Nevertheless, 'summary judgment or a directed verdict is mandated where the facts and the law will reasonably support only one conclusion.' " *Id.* (quoting *Wilander,* 498 U.S. at 356, 111 S.Ct. at 818). *See also Chandris,* 515 U.S. at 368–69, 115 S.Ct. at 2189–90. Because the Court is satisfied that the evidence presented by Plaintiff reasonably supports only one conclusion, *i.e.,* assuming *arguendo* that Plaintiff was an employee of Defendants, she was at most a "land-based" employee, Defendants' motion for partial summary judgment shall be granted.

Based upon the evidence currently before the Court, no reasonable jury could conclude that Plaintiff's connection to the "A Modo Mio" was "substantial in terms of both its duration and nature." *Chandris,* 515 U.S. at 368, 115 S.Ct. at 2190. The fundamental purpose of the "substantial connection" requirement:

> Is to give full effect to the remedial scheme created by Congress and to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore

**3.** In fact, neither party even cited *Chandris,* relying for the most part upon circuit and district court cases decided prior to the Supreme Court's decision in *Chandris.*

whose employment does not regularly expose them to the perils of the sea. This requirement therefore determines which maritime employees in *Wilander*'s broad category of persons eligible for seaman status because they are "doing the ship's work," are in fact entitled to the benefits conferred upon seamen by the Jones Act because they have the requisite employment-related connection to a vessel in navigation.

*Id.* at 368–69, 115 S.Ct. at 2190 (internal citations omitted). To fulfill this purpose, "it is important that a seaman's connection to a vessel in fact be substantial in *both* respects." *Id.* at 371, 115 S.Ct. at 2191 (emphasis added).

Plaintiff's responsibilities *vis a vis* the "A Modo Mio" fail the "substantial connection" test in terms of both their duration and nature. "A maritime worker who spends only a small fraction of his working time on board a vessel is fundamentally land based and therefore not a member of the vessel's crew, regardless of his duties." *Id.* As stated by the Supreme Court:

> Generally, the Fifth Circuit seems to have identified an appropriate rule of thumb for the ordinary case: A worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act. This figure of course serves as no more than a guideline established by years of experience, and departure from it will certainly be justified in appropriate cases.

*Id.*

During her deposition, Plaintiff testified that she was hired to clean Defendants' houses in 1995. (Isrow Dep. at 18). Plaintiff further testified that she had been on the "A Modo Mio" only "[o]nce or twice" before the incident on August 7, 1998. (*Id.* at 20). Plaintiff, however, testified that she had cleaned Defendants' condo "ten times at least." (*Id.* at 21). Plaintiff also testified that since she was hired, she cleaned Defendants' house in Algonac, Michigan, at least once a week, and their

house in Mount Clemens approximately once every other month since 1997. (*Id.* at 22–25).

Taking all of Plaintiff's employment with Defendants into consideration, the three times that Plaintiff cleaned the "A Modo Mio" clearly falls short of the thirty percent rule of thumb approved of by the Supreme Court. *See Chandris*, 515 U.S. at 371, 115 S.Ct. at 2191. Furthermore, the Court does not believe that this is a case that warrants departure from the thirty percent rule. The Court is satisfied that Plaintiff's "transitory and sporadic connection" with the "A Modo Mio" is exactly the type of employment that the Supreme Court wished to separate from Jones Act protection by adopting the "substantial connection" requirement. *See Harbor Tug*, 520 U.S. at 555, 117 S.Ct. at 1540; *Chandris*, 515 U.S. at 368, 115 S.Ct. at 2190.

Similarly, no reasonable jury could conclude from the evidence presented by Plaintiff that her connection to the "A Modo Mio" was substantial in terms of its nature. In *Harbor Tug*, the Supreme Court explained that:

> The inquiry into the nature of the employee's connection to the vessel *must concentrate on whether the employee's duties take him to sea.* This will give substance to the inquiry both as to the duration and nature of the employee's connection to the vessel and be helpful in distinguishing land-based from sea-based employees.

*Harbor Tug*, 520 U.S. at 555, 117 S.Ct. at 1540 (emphasis added). Nothing in the evidence presented by Plaintiff indicates that her duties, which included changing the sheets, cleaning the bathrooms and galley, and vacuuming, "took her to sea," or "regularly expose[d] her to the perils of the sea." *See id.*

Although Plaintiff has presented expert testimony that she was performing the work of a seaman at the time of her injury, the Supreme Court has specifically stated

that "a worker is no longer considered to be a seaman simply because he is doing a seaman's work at the time of the injury." *Chandris,* 515 U.S. at 361, 115 S.Ct. at 2186. Furthermore, "[a] maritime worker who spends only a small fraction of his working time on board a vessel is fundamentally land based and therefore not a member of the vessel's crew, regardless of what his duties are." *Id.* at 371, 115 S.Ct. at 2191.

Lastly, Plaintiff argues that "it is imperative that granting partial summary disposition on the issue of 'seaman' status in [sic] an exception, not the rule." (Pl.'s Resp. at 13). The Supreme Court, however, has specifically stated that "where undisputed facts reveal that a maritime worker has a clearly inadequate temporal connection to vessels in navigation, the court may take the question from the jury by granting summary judgment or a directed verdict." *Id.* The Court is satisfied that the undisputed facts of this case reveal an inadequate connection between Plaintiff and Defendants' vessel in terms of both its duration and its nature. Therefore, summary judgment in favor of Defendants with respect to Plaintiff's Jones Act claims is warranted.

### 3. Plaintiff's Jones Act Claims

In response to Defendants' motion for partial summary judgment, Plaintiff contends that the other four claims contained in her complaint, *i.e.* her claims that Defendants failed to exercise reasonable care to provide a safe vessel, a seaworthy vessel, and "maintenance and cure," and for a maritime lien under general admiralty/maritime law, "do not require a finding of seaman's status, rather they simply re-

quire a finding that Plaintiff was performing the work of a seaman at the time of the injury." (Pl.'s Resp. at 8). Therefore, Plaintiff contends that even if partial summary judgment is granted to Defendants, her other four claims remain.

In reply, Defendants concede that if partial summary judgment is granted to them, Count I of Plaintiff's complaint, asserting that Defendants failed to provide a reasonably safe vessel as required under general maritime law (Count I), remains. Defendants, however, contend that once this Court determines that Plaintiff is not entitled to "seaman" status under the Jones Act, Counts II and III of the complaint must be dismissed because they require a finding of "seaman" status.[4]

Traditionally, the duty of seaworthiness has been owed only to seamen. *See Seas Shipping Co. v. Sieracki,* 328 U.S. 85, 87–90, 66 S.Ct. 872, 874–75, 90 L.Ed. 1099 (1946), *superseded by statute as stated in Edmonds v. Compagnie Generale Transatlantique,* 443 U.S. 256, 99 S.Ct. 2753, 61 L.Ed.2d 521 (1979); *see also Chisholm v. UHP Projects, Inc.,* 205 F.3d 731, 734 (4th Cir.2000) ("[S]hipowner owes the *seaman* an absolute, non-delegable duty to provide a seaworthy vessel." (emphasis added)); *Knight v. Alaska Trawl Fisheries, Inc.,* 154 F.3d 1042, 1045 (9th Cir.1998) (recognizing that duty of seaworthiness is "a duty traditionally owed to *seamen*"(emphasis added)). Although the Supreme Court in *Sieracki* extended the duty of seaworthiness to certain longshoremen based upon the fact that such longshoremen were "doing a seaman's work and incurring a seaman's hazards," *Sieracki,* 328 U.S. at 99, 66 S.Ct. at 879, the Su-

---

4. Defendants also contend that Plaintiff is not entitled to a jury trial with respect to Count I, and that Plaintiff does not have a valid maritime lien on the "A Modo Mio" (Count IV) because she has failed to comply with the special provisions of Rule C of the Federal Rules of Civil Procedure Supplemental Rules for Certain Admiralty and Maritime Claims. (Defs.' Reply at 6–7). "[I]t is well-settled that a party may not raise new issues for the first time in a reply brief." *Resolution Trust Corp. v. Townsend Assoc. Ltd. Partnership,* 840 F.Supp. 1127, 1142 n. 15 (E.D.Mich.1993) (citing *United States v. Jerkins,* 871 F.2d 598 (6th Cir.1989)). Because Defendants have improperly raised these issues for the first time in their reply brief, and Plaintiff has not had an opportunity to respond, the Court shall not address Defendants' arguments.

preme Court has ((since recognized that Congress's enactment of the Longshore and Harbor Worker's Compensation Act, 33 U.S.C. § 905, effectively overruled their decision in *Sieracki. See Edmonds,* 443 U.S. at 262, 99 S.Ct. at 2765.

■ Furthermore, the Supreme Court has subsequently made it clear that "a worker is no longer considered to be a seaman simply because he is doing a seaman's work at the time of the injury." *Chandris,* 515 U.S. at 361, 115 S.Ct. at 2186. Just as Plaintiff is not entitled to status as a seaman because she was allegedly "performing the work of a seaman at the time of her injury," Plaintiff is similarly not entitled to reap the rewards of duties traditionally owed only to seamen based merely upon the fact that she may have been performing the work of a seaman. Accordingly, Count II of the complaint, based upon Defendants' duty of seaworthiness, must be dismissed because Plaintiff is not entitled to seaman status.

■ Similarly, "[o]nly 'seamen' can assert the right to maintenance and cure." *Guevara v. Maritime Overseas Corp.,* 59 F.3d 1496, 1499 (5th Cir.1995). Therefore, Plaintiff's claim for maintenance and cure (Count III) must also be dismissed.

### *Conclusion*

For the reasons stated above, Defendants' motion for partial summary judgment regarding Plaintiff's status as a "seaman" under the Jones Act shall be granted and Plaintiff's claim under the Jones Act, as well as her claims based upon the warranty of seaworthiness (Count II) and maintenance and cure (Count III) shall be dismissed.

An Order consistent with this Opinion shall issue forthwith.