753 F.2d 1327
 1985 A.M.C. 2682
 Maureen ALI, personal representative of the Estate of Amin
Ali, Deceased, Plaintiff-Appellant,
v.
The OFFSHORE COMPANY, et al., Defendants-Appellees.
Theodora FRASER, personal representative of the Estate of
Agustus Daniel Fraser, Deceased, Plaintiff-Appellant,
v.
The OFFSHORE COMPANY, et al., Defendants-Appellees.
 No. 83-3621.
 United States Court of Appeals,
Fifth Circuit.
 Feb. 28, 1985.
 
 Frank A. Silvestri, New Orleans, La., for plaintiff-appellant.
 Michael M. Christovich, W.K. Christovich, New Orleans, La., for The Offshore Co.
 Joel L. Borrello, New Orleans, La., for Amoco.
 Ralph E. Smith, New Orleans, La., for Smatco and TBW.
 Appeal from the United States District Court for the Eastern District of Louisiana.
 Before GEE, REAVLEY and DAVIS, Circuit Judges.
 GEE, Circuit Judge:
 
 
 1
 The plaintiffs in these actions, widows of citizens of Trinidad killed when an hydraulic winch malfunctioned aboard a mobile oil drilling vessel operating in national waters of Trinidad, brought actions for wrongful death against the ship's owners and operators and against the designers and manufacturers of the winch. The district court dismissed them. Its stated ground was lack of subject matter jurisdiction, although it conditioned dismissal upon the defendants' consenting to appear in a foreign forum. Because we conclude that the dismissal for lack of subject matter jurisdiction was improper and that the district court did not complete the two-part forum non conveniens analysis outlined by this court in Nicol v. Gulf Fleet Supply Vessels, Inc., 743 F.2d 289 (5th Cir.1984), we remand for further consideration of the forum non conveniens issue.
 
 I. Facts
 
 2
 The plaintiff's decedents, citizens of Trinidad who were working aboard the drilling ship DISCOVERER 511 in the national waters of Trinidad about eleven miles from Galeota Point, were killed when the torque arm of an hydraulic winch failed in November 1979. The plaintiffs asserted claims under the Jones Act[1] and other applicable death statutes and the general maritime law against the owner of the vessel, Amoshore Drilling Co. (Amoshore), a Liberian corporation; Amoshore's parent corporation, Amoco Drilling Services, Inc. (Amoco Drilling), a Delaware corporation with its principal place of business in Illinois; Offshore International, S.A. and the Offshore Co., affiliates of Amoshore and Amoco;[2] and Smatco, Inc. (Smatco) and T.B.W. Industries, Inc. (TBW) the designers and manufacturers of the winch.[3] They also asserted a product liability claim against Smatco and TBW, presumably under the general maritime law, and a strict liability claim against all defendants under a provision of the Louisiana Civil Code that makes the custodian of a thing that causes injury presumptively liable for damages.[4]
 
 
 3
 The winch that failed was designed, built, inspected, and installed in the United States. The DISCOVERER 511 was also built there. Between 1976 and 1979 the DISCOVERER 511 operated variously in the waters of Trinidad, Guyana, Spain, Greece, and Egypt and was refitted in the United States once. It reentered Trinidadian waters in November 1979, shortly before the plaintiffs' decedents were killed. When the parties briefed this appeal, the ship was in Egyptian waters.
 
 
 4
 At the time of the fatal incident, Amoshore's Trinidad office directed the ship's daily operations and maintained records, and Trinidadian drilling regulations applied to the work. Some eyewitnesses appear to have been Trinidadians who worked for the labor contractor who also employed the plaintiffs' decedents. The record does not disclose whether any eyewitnesses may be assigned to the ship permanently and thus located wherever the ship may be found. Witnesses to the design, manufacture, inspection, and installation of the allegedly defective winch are located in Louisiana.
 
 II. The Applicable Law
 
 5
 In Nicol v. Gulf Fleet Supply Vessels, Inc., this Court set forth the analysis to be applied to a forum non conveniens motion in the context of an action by a maritime worker against the owner or operator of his vessel. 743 F.2d 289 (5th Cir.1984). First, the court determines whether United States law governs by applying the eight factor test developed in Lauritzen v. Larsen, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1253 (1953), and Hellenic Lines Ltd. v. Rhoditis, 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970).[5] Those factors are (1) place of wrongful act, (2) law of the flag, (3) allegiance or domicile of injured party, (4) allegiance of the defendant shipowners, (5) place of the contract, (6) inaccessibility of the foreign forum, (7) law of the forum, and (8) shipowner's base of operations. The weight to be accorded these factors varies according to the context. Koke v. Phillips Petroleum Co., 730 F.2d 211, 219-220 (5th Cir.1984). In Chiazor v. Transworld Drilling Co., we held that factors such as the place of the wrong and the allegiance or domicile of the plaintiff take on a greater importance in the context of a nontraditional maritime vessel like a submersible drilling rig stationed offshore. 648 F.2d 1015, 1019 (5th Cir.1981), cert. denied, 455 U.S. 1019, 102 S.Ct. 1714, 72 L.Ed.2d 136 (1982). On appeal, we review the choice of law issue de novo.
 
 
 6
 If the court determines that United States law applies, it ordinarily keeps the case. De Oliveira v. Delta Marine Drilling Co., 707 F.2d 843, 845 (5th Cir.1983). But see Piper Aircraft Co. v. Reyno, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). If the court determines that United States law does not apply, the court balances the public and private convenience factors set forth in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), to determine whether it should dismiss the case.
 
 
 7
 Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial.
 
 
 8
 * * *
 
 
 9
 * * *
 
 
 10
 Administrative difficulties follow courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.
 
 
 11
 Gulf Oil, 330 U.S. at 508-509, 67 S.Ct. at 843.
 
 
 12
 III. Choice of Law Analysis as the First Prong of the Forum
 
 Non Conveniens Test
 
 13
 Like the district court in Nicol, the district court here performed the choice of law analysis that forms the first prong of a forum non conveniens analysis and, concluding that United States law did not apply, dismissed the case for lack of subject matter jurisdiction. In so doing, the district court erred. The district court did not address whether the plaintiffs' decedents were Jones Act seamen or whether the named defendants were Jones Act employers. Those matters go to the question of subject matter jurisdiction. As we noted in Nicol, Romero v. International Terminal Operating Co., 358 U.S. 354, 359, 79 S.Ct. 468, 473, 3 L.Ed.2d 368 (1959), makes clear that "choice of law in Jones Act/general maritime law cases is relevant only to the doctrine of forum non conveniens and has nothing to do with subject matter jurisdiction." Nicol, at 294; see also Sosa v. M/V Lago Izabal, 736 F.2d 1028, 1031 (5th Cir.1984). The district court therefore erred when it dismissed the case without proceeding to balance the Gulf Oil factors as they apply to the facts of this case, and we must remand for consideration of the forum non conveniens issue.
 
 
 14
 On remand, the district court need not reconsider its choice of law analysis as to the Jones Act and maritime death statute claims against the owners and operators of the vessel. We agree with the district court that the method of weighing the Lauritzen-Rhoditis factors adopted in the Chiazor line of cases governs this case. See Koke v. Phillips Petroleum Co., 730 F.2d 211 (5th Cir.1984); De Oliveira v. Delta Marine Drilling Co., 707 F.2d 843 (5th Cir.1983); Bailey v. Dolphin International, Inc., 697 F.2d 1268 (5th Cir.1983); Vaz Borralho v. Keydril Co., 696 F.2d 379 (5th Cir.1983); Chiazor v. Transworld Drilling Co., 648 F.2d 1015 (5th Cir.1981), cert. denied, 455 U.S. 1019, 102 S.Ct. 1714, 72 L.Ed.2d 136 (1982); Zekic v. Reading & Bates Drilling Co., 536 F.Supp. 23 (E.D.La.1981), vacated in part on other grounds, 680 F.2d 1107 (5th Cir.1982) (per curiam). Although the DISCOVERER 511 is considerably more mobile than were the fixed rig vessels in the Chiazor line of cases, its involvement in the offshore drilling industry in the territorial waters of another sovereign, Trinidad, lends greater weight to the place of the wrong and the domicile of the plaintiff in the choice of law analysis.[6] In short, in the circumstances of this case Trinidad's interest in regulating the conduct of its offshore oil industry is greater than the United States' interest in regulating the conduct of domestic corporations drilling for oil in the territorial waters of another sovereign.[7] To the extent that the plaintiffs' complaint may be read to state a cause of action against the vessel owner or operator under the Death on the High Seas Act[8] or under the general maritime law, the same analysis applies.
 
 
 15
 At one point in its analysis, the district court appears to have assumed that the law of one country would necessarily apply to all issues in this case, including the product liability claims against the manufacturers and designers of the winch.[9] It therefore tried to fit square pegs into round holes by incorporating the contacts between the United States and the products liability action into the eight-factor Lauritzen-Rhoditis analysis. We assume, without deciding, that some form of product liability law as it is understood in the United States[10]--either a maritime common law of product liability or the Louisiana law of product liability[11]--would apply to the plaintiffs' claims against the manufacturers and designers of the winch. That fact, however, is not of primary significance in performing a forum non conveniens analysis. In Piper Aircraft Co. v. Reyno, the Supreme Court held that the mere fact that United States law would apply to at least one of two defendants in a product liability action did not require that the case be retained in the United States judicial system when a Gulf Oil analysis demonstrated that the United States was an inconvenient forum.[12] 454 U.S. 235, 247-49, 102 S.Ct. 252, 261-62, 70 L.Ed.2d 419 (1981).
 
 
 16
 The district court's task remains to apply the Gulf Oil factors and act accordingly to retain or dismiss the suit.[13] In applying the Gulf Oil test, the court should consider the Gulf Oil factors both as they pertain to the Jones Act claims and to the product liability claims.[14] If, on remand, application of the Gulf Oil analysis leads the court to dismiss all or part of these actions,[15] we believe that the better practice would be to impose somewhat more stringent conditions upon the dismissal than that the defendants consent to appear in a foreign forum.[16]
 
 The district court's order of dismissal is
 
 17
 VACATED and the causes are REMANDED.
 
 
 
 [1]
 46 U.S.C. Sec. 688 (1982)
 
 
 [2]
 Offshore International, S.A. is a Panamanian corporation; the Offshore Co. is a Delaware corporation
 
 
 [3]
 Smatco and TBW are Louisiana corporations
 
 
 [4]
 La.Civ.Code Ann. art. 2317 (West 1979). The Louisiana Supreme Court has interpreted this article to mean that a person is liable for damage caused by a defective thing in his custody unless he shows that the damage was caused by the fault of the victim, by the fault of a third person, or by an irresistible force. Loescher v. Parr, 324 So.2d 441 (La.1975)
 
 
 [5]
 As we noted in Liaw Su Teng v. Skaarup Shipping Corp., situations other than suits by injured crew members against their employers or host vessels may require a different analysis as to the applicable body of law. 743 F.2d 1140 at 1144-45 (5th Cir.1984)
 
 
 [6]
 In holding that Chiazor and its progeny apply here, we are guided, though not bound, by Congress' 1982 amendment to the Jones Act. That amendment, which does not apply to this case because the decedents were killed in 1979, denies a Jones Act remedy to foreign seamen in the offshore oil drilling industry when they are injured in another country's territorial waters, unless neither that country nor the seaman's country of citizenship or residency provides any remedy. 46 U.S.C. Sec. 688(b) (1982). See Vaz Borralho v. Keydril Co., 710 F.2d 207 (5th Cir.1983), denying rehearing and rehearing en banc to 696 F.2d 379 (5th Cir.1983). The record in this case does not demonstrate that Trinidadian law provides no remedy for injured seamen, and we would be surprised if it did not
 In Nicol v. Gulf Fleet Supply Vessels, Inc., 743 F.2d 289 at 297 (5th Cir.1984), we advised the district court to reconsider its holding that the Chiazor line of cases applied to a self-propelled tugboat engaged in drilling operations in a number of countries over a three-year period. The Nicol case, however, lacked the element of injury occurring within the territorial waters of another country.
 
 
 [7]
 The district court erred in finding that the third factor in the Lauritzen-Rhoditis test, the allegiance or domicile of the defendant shipowner, suggested the application of Trinidadian law. The parties agree that the shipowner, Amoshore, is a Liberian corporation. Furthermore, it appears that Amoshore is a subsidiary of Amoco Drilling, a Delaware corporation, so that beneficial ownership of the vessel is in the United States. This error was not harmful, however. That the shipowner is American does not tilt the balance in favor of the application of United States law where, as here, the plaintiffs are foreign citizens, the place of the wrong the territorial waters of another country, and the context that of offshore oil drilling. See Vaz Borralho v. Keydril Co., 696 F.2d 379, 389 (5th Cir.1983)
 
 
 [8]
 46 U.S.C. Sec. 761 (1982)
 
 
 [9]
 Because modern conflicts of law interest analysis shows that the interests of one state having contacts with the cause of action may predominate on one issue while the interests of another may predominate on others, sometimes the laws of different states apply to different parts of the same controversy. Restatement (Second) of Conflict of Laws Sec. 6 comment f (1971)
 
 
 [10]
 Assuming, as the parties do in their briefs, that the Trinidadian law of product liability permits recovery under principles less generous than those that prevail in the United States, the "false conflicts" analysis employed by the Third Circuit in Reyno v. Piper Aircraft Co., 630 F.2d 149, 166-68 (3d Cir.1980), rev'd on other grounds sub nom Piper Aircraft Co. v. Reyno, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981), in a similar situation may apply here. Louisiana also has subscribed to the "false conflicts" doctrine in conflict of law analysis. Jagers v. Royal Indemnity Co., 276 So.2d 309, 311-12 (La.1973)
 As we note below, under the Supreme Court's decision in Piper, choice of law analysis is only tangentially relevant to the Gulf Oil analysis and ordinarily need not be performed before the forum non conveniens analysis is undertaken. 454 U.S. at 249-252, 254-255, 102 S.Ct. at 262-264, 265. We do not have sufficient information to make the choice of law decision for the products liability claim, nor do we think that the district court need make that decision before performing the forum non conveniens analysis in this case.
 
 
 [11]
 If the products liability claim meets the admiralty jurisdiction test of Executive Jet Aviation, Inc. v. Cleveland, 409 U.S. 249, 268, 93 S.Ct. 493, 504, 34 L.Ed.2d 454 (1972), that the locality of the injury be on navigable waters and the wrong bear a significant relationship to traditional maritime activity, see also Sperry Rand Corp. v. Radio Corp. of America, 618 F.2d 319 (5th Cir.1980), then the applicable law is the federal maritime law, regardless of whether the basis for jurisdiction is admiralty or diversity jurisdiction as permitted under the saving to suitors clause of 28 U.S.C. Sec. 1333 (1982). See Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 408-411, 74 S.Ct. 202, 204-206, 98 L.Ed. 143 (1953)
 Even if the Louisiana law of products liability applies to the manufacturers in this case, we doubt very much whether art. 2317 could be applied to the owners and operators of the ship. It appears to us that such recognized remedies in admiralty as the Jones Act and the suit for breach of the warranty of seaworthiness would preempt the field and prevent the application of conflicting Louisiana law. Moreover, implicit in our affirmance of the district court's holding that United States law does not apply to the seamen's cause of action against the owners and operators of his vessel in the circumstances of this case is our view that Louisiana's interest in regulating the conduct of these persons is subordinate to that of Trinidad.
 
 
 [12]
 In approving the district court's dismissal in Piper on forum non conveniens grounds, the Supreme Court relied upon the facts that fewer evidentiary problems would be posed by trial in the foreign forum, the problems posed by the inability to implead potential third-party defendants supported holding trial in the foreign forum, and the foreign forum had a strong interest in deciding a local controversy. Piper, 454 U.S. at 257-260, 102 S.Ct. at 266-268
 
 
 [13]
 The two-prong forum non conveniens analysis approved in this Circuit in Jones Act and similar cases is not inconsistent with Piper's de-emphasis upon the relevance of choice of law issues in the forum non conveniens inquiry. The Piper court explained that its approach dispensed with a choice of law inquiry that required the district court to determine both which law the federal court would apply and which law the foreign forum would apply. Piper, 454 U.S. at 251, 102 S.Ct. at 263. Such a complicated and unprofitable exercise in comparative law would unduly burden the court when forum non conveniens dismissal is designed not only to relieve the parties of the burden of litigating in an inconvenient forum, but to clear the courts of protracted litigation in which the original forum has little sovereign interest. Gulf Oil, 330 U.S. at 508-509, 67 S.Ct. at 843
 In contrast to the choice of law analysis rejected in Piper, the choice of law decision in the Jones Act context is a relatively simple one and is an easy means of reaching a preliminary decision on the forum non conveniens issue. Litigants remain free to demonstrate that, although United States law would apply, the full panoply of the Gulf Oil analysis leads to the conclusion that the United States forum is inconvenient.
 
 
 [14]
 If federal maritime law controls the plaintiffs' saving to suitors clause product liability action, the law of forum non conveniens, as the federal courts have developed it, controls as well. See Symeonides v. Cosmar Compania Naviera, S.A., 433 So.2d 281, 284-5 (La.Ct.App.1983), cert. denied, --- U.S. ----, 104 S.Ct. 1442, 79 L.Ed.2d 762 (1984). If the plaintiffs' product liability claim is a true diversity action that lacks sufficient maritime nexus to be governed by maritime law, it remains unresolved whether state or federal law of forum non conveniens applies. See Piper v. Reyno, 454 U.S. 235, 248 n. 13, 102 S.Ct. 252, 262 n. 13, 70 L.Ed.2d 419 (1981). We need not address the question here. None of the parties has cited any authority to suggest that Louisiana courts would apply a doctrine of forum non conveniens different from that enunciated in Gulf Oil. The Louisiana cases holding, in the context of transfer of venue, that Louisiana law has no doctrine of forum non conveniens, Chaney v. Williher, 205 So.2d 770 (La.Ct.App.1967); Trahan v. Phoenix Insurance Co., 200 So.2d 118 (La.Ct.App.1967), were legislatively overruled in 1970. 1970 La. Acts No. 294, Sec. 1, codified at La.Code Civ.Proc.Ann. art. 123 (West 1960 and Supp.1984)
 
 
 [15]
 In this case, the manufacturer defendants may be able to show, as they did in Piper, that one factor supporting dismissal of the case on forum non conveniens grounds is the difficulty of impleading potential third-party defendants whose negligence may have contributed to the injury. Piper, 454 U.S. at 259, 102 S.Ct. at 267. In the absence of such problems or similar ones prejudicing defendants or absent third parties, a court might in its discretion dismiss those claims that it is inconvenient to try in the plaintiff's chosen forum and retain the claims that it is convenient to try there. If the foreign plaintiff is willing to expose himself to the risk of inconsistent verdicts in two forums, his choice of forum deserves deference to that extent
 
 
 [16]
 The Piper court recommended that, when a court declines to exercise jurisdiction over a claim concerning the design, manufacture, and testing of a product in the United States, it condition its dismissal upon the defendants' agreeing to make the relevant records available in the foreign forum. Piper, 454 U.S. at 257, n. 25, 102 S.Ct. at 267, n. 25. Decisions in this Circuit suggest the imposition of the following conditions: that the defendants submit to service of process and jurisdiction in the appropriate court in Trinidad within ninety days of the order of dismissal; that the defendants formally waive in the Trinidadian proceeding any statute of limitations defense that has matured since the commencement of this action in the Eastern District of Louisiana; that the defendants formally agree in the Trinidadian forum to make available in the Trinidadian proceeding all relevant witnesses or, in lieu thereof, to schedule depositions at a reasonable time and place, and to make available any documents within their control and that any depositions, answers to interrogatories, requests for admissions and the like filed herein may be used in the foreign proceeding to the same extent as if they had originated therein; that the defendants formally agree in the Trinidadian forum to satisfy any final judgment; and that should the defendants fail to meet any of these conditions, the district court will resume jurisdiction over the case. See Bailey v. Dolphin International, Inc., 697 F.2d 1268, 1279-80 (5th Cir.1983); Vaz Borralho v. Keydril Co., 696 F.2d 379, 394-395 (5th Cir.1983)