## ALI v MOONGLOW TRAWLER CO., et al.

Case No. 87-1563

Thirteenth Judicial Circuit, Hillsborough County

June 19, 1989

### APPEARANCES OF COUNSEL

**William M. Alper,** for plaintiff.

**Brendan P. O'Sullivan,** for defendants.

### OPINION OF THE COURT

GUY W. SPICOLA, Circuit Judge.

*ORDER DENYING MOTION TO QUASH SERVICE OF PROCESS AND DENYING SUMMARY JUDGMENT*

This matter is before the court on defendants Moonglow Trawler Co., B. G. Shrimp Sales Company, Shrimpboat Management, Ltd. and Sahlman Seafoods, Inc.,'s Motion to Quash Service of Process and/or for Summary Judgment. The court heard argument of counsel, reviewed the parties' memoranda of law and reviewed the cases cited therein. The court also conducted an extensive review of cases not cited by the parties.

## BACKGROUND

This action is before the court under the Jones Act (46 USC Sect. 688) and general maritime law to recover for injuries allegedly sustained by plaintiff Farhad Ali, ("Ali") while serving as crew member aboard a vessel owned by the Moonglow Trawler Co. ("Moonglow"), which company has since merged with Sahlman Seafoods, Inc. ("Sahlman"). Also named as defendants were B.G. Shrimp Sales Company ("BG") and Shrimp Boat Management, Ltd. ("SBM"), two affiliated companies. The claimed injuries occurred in the territorial waters or fishing zone of Guyana, South America, of which Ali is a citizen.

## DISCUSSION

State courts have the authority to hear in personam maritime actions under the "saving to suitors" clause of the Judiciary Act of 1789, Sect. 9, 1 *Stat.* 76, as amended by 28 USC Sect. 1333 (" . . . saving to suitors in all cases all remedies to which they are otherwise entitled"). The state courts are obliged to follow the substantive maritime law, although they may use their own procedural rules. However, the states are constrained by a so-called "reverse *Erie*" doctrine which requires conformity to federal maritime standards. *Offshore Logistics, Inc. v Tallentire,* 108 S.Ct. 2485, 1495 (1986). In keeping with these guidelines, the following analysis looks to federal maritime law for guidance in substantive issues and to state law for procedural issues.

## DISREGARD OF CORPORATE ENTITY

Both sides in the instant case address the issue of "piercing the corporate veil." Plaintiff desires to look beyond BG and SBM to impose liability as well on the alleged parent company Sahlman. While this factor could be discussed under the choice of law section, *infra,* the court addresses it here as a threshold issue in determining whether this action is appropriate for summary judgment.

In order to impose liability under the Jones Act, it is axiomatic that there must be an employee-employer relationship between plaintiff and defendant. *Spinks v Chevron Oil Co.,* 507 F.2d 216, 224 (5th Cir. 1975), cited in *Stamoulos v Howland Panama S.A.,* 610 F. Supp. 454, 456 (E.D. La. 1985). Plaintiff maintains that SBM and BG are the mere instrumentalities of his true employer Sahlman. He goes to great lengths to show interlocking corporate structures among the three entities — all established, plaintiff asserts, to evade liability for his injury.

Defendants claim there can be no disregard of the corporate entity without a finding of improper conduct on their part. The only action

106

the plaintiff can bring, defendants state, is against SBM, which bare-boat chartered the shrimp trawler "Cap. Wallace" from Moonglow, now merged with Sahlman. While an improper conduct analysis is required under state standards in Florida, federal caselaw is not in complete accord on this issue. See. e.g., *Cunningham v Rendezvous, Inc.,* 699 F.2d 676, 689 (4th Cir. 1983 ("[I]t is clear . . . that the corporate veil may be pierced in appropriate circumstances even in the absence of fraud or wrongdoing.")

Neither side's supporting memoranda indisputably establishes who Ali's employer was at the time of the injury. Such facts as who hired Ali, who set his hours, who paid his wages, who decided which boat he worked on, and who had the authority to terminate his employment are not addressed by either party. One court has stated:

> Factors indicating control over an employee include payment, direc-tion, and supervision of the employee. Also relevant is the source of the power to hire and fire. The control which is exercised must be substantial; the mere possibility of some control over the actions of an employee will not suffice to find an employer-employee relation-ship. *Volyrakis v M/V Isabelle,* 668 F.2d 863, 866 (5th Cir. 1982), citing *Guidry v So. Louisiana Contractors,* 614 F.2d 447, 455 (5th Cir. 1980).

Were it established that Sahlman made all or the majority of these decisions, or even that Sahlman had the power to countermand or control any employment decisions made by SBM, then there would be a justification in disregarding SBM and finding Sahlman the beneficial employer. *Maritime Ventures, Inc. v Caribbean Trading & Fidelity, Ltd.,* 689 F. Supp. 1340 (S.D.N.Y. 1988).

Plaintiff's allegations that it is Sahlman and BG, and not SBM, who handle the investigation of injuries and the adjustment of claims of injured crewmen indicate that his argument about the identity and/or control of Ali's employer may have merit. This claim presents a genuine issue of material fact concerning Sahlman's involvement in the operation and management of SBM and, thus, is not appropriate for summary judgment.

### JURISDICTION AND SERVICE OF PROCESS

Actions brought under the Jones Act and under federal maritime law must meet the jurisdictional requirements set forth by the United States Supreme Court in *Executive Jet Aviation, Inc. v Cleveland,* 409 U.S. 249 (1972). Under this test, there generally must be some nexus between the alleged wrong and maritime activity. The Court has held

107

that the federal interest in protecting maritime commerce could be upheld "only if all operators of vessels on navigable waters are subject to uniform rules of conduct." *Foremost Ins. Co. v Richardson,* 457 U.S. 668, 675 (1972). The instant case obviously meets this standard.

In addition to meeting these broad constitutional tests, service of process must be proper under statutory standards. *Worldwide Vokswagen Corp. v Woodson,* 444 U.S. 286 (1980); see also *Koupetoris v Konkar Intrepid Corp.,* 535 F. 2d 1392 (2d Cir. 1976). Florida's personal jurisdiction statutes, codified at *Fla. Stats.* 48.181 (1987) and 48.193 (1988 Supp.), provide that any person, whether or not a citizen or resident of Florida, who personally or through an agent does any of certain enumerated acts submits himself to the jurisdiction of the courts of the state. One listed act is operating, conducting, engaging in or carrying on a business or business venture in Florida or having an office or agency in Florida. While SBM had no business operations in this state, it is possible SBM has an agency relationship with Florida corporations Sahlman and BG.

Because the agency assertion of the plaintiff states a prima facie claim of a relationship between SBM and the properly served Sahlman and BG, the Motion to Quash Service of Process is denied.

## CHOICE OF LAW

The Jones Act grants a cause of action to "any seaman who shall suffer personal injury in the course of his employment." 46 USC Sect. 688. It is no secret that a foreign seaman (and, by extension, his attorney) will nearly always obtain a greater damage recovery if the action is brought in an American, rather than foreign, court. Because the Jones Act and general maritime law do not statutorily limit the jurisdiction of the American courts, it has been left up to the judiciary to define the broad scope of the Act. At a minimum, the courts have held that an American forum will not be available to every foreign seaman injured in the course of his employment anywhere in the world. *Vaz Borralho v Keydril Co.,* 696 F.2d 379, 390 (5th Cir. 1983) ("The Constitution does not require the United States, as a condition of applying its own laws to its own citizens and residents, to be courthouse and law maker for the world.").

Commencing in 1953, the Supreme Court and the lower courts began to evaluate the contacts between the personal injury and the United States. Most courts have held that the contacts must be "substantial," a general term that appears to mean the contacts must elicit sufficient national interest to justify the use of American law. By way of guidance, the Supreme Court has laid down the famous

108

*Lauritzen-Rhoditis* test. *Lauritzen v Larsen,* 345 U.S. 571 (1953); *Hellenic Lines, Inc. v Rhoditis,* 389 U.S. 306 (1970). Briefly stated, the test enunciates the eight factors to be considered in seamen's cases, especially when the Jones Act is involved. As set out in *Lauritzen,* they are:

(1) Place of the wrongful act.

(2) Law of the ship's flag,

(3) Allegiance or domicile of the injured seaman,

(4) Allegiance of the defendant shipowner,

(5) Place of the seaman's contract,

(6) Accessibility of the foreign forum,

(7) Law of the forum in which the claim is brought. In *Rhoditis,* the Court emphasized that use of American law is not subject to a mechanical approach, implying that mere "contact counting" would not suffice. The Court then added the additional factor of the shipowner's base of operation.

The circumstances of the instant case, foreign seaman injured in foreign waters while employed on a ship beneficially owned by American interests, are not rare. Many cases, most of them from the Second Circuit Court of Appeals, have found indirect ownership to be a substantial factors supporting application of the Jones Act. *See,* e.g., *Bartholomew v Universe Tankships,* 263 F.2d 437 (2d Cir. 1959), cert. denied 359 U.S. 1000 (1959) (British West Indian seaman sued Liberian corporation owned by Panamanian corporation and ultimately owned by American stockholders); *Bobolakis v Compania Panemena Maritima San Gerassimo,* 268 F. Supp. 236 (S.D.N.Y. 1958) (Greek seaman sued for injuries sustained in Canadian waters aboard Panamanian vessel, beneficially owned by New York citizens); *Antypas v Compania Maritima San Basilio S.A.,* 541 F.2d 307 (2d Cir. 1976), cert. denied 429 U.S. 1098 (1977) (Greek seaman injured in foreign waters allowed to invoke Jones Act because Panamanian vessel was in fact owned by American citizens); *Grove v Universe Tankships, Inc.,* 308 F. Supp. 826 (S.D.N.Y. 1970) (British West Indian seaman's death aboard a Liberian ship in Japanese waters created cause of action when Panamanian corporation which owned ship was in turn owned by American citizens.)

In a well-reasoned opinion, one court found stock ownership to be an insufficient basis for applying the Jones Act. In addition to stock ownership, the court stated, the plaintiff must make a showing of "operation and control by citizens of [the U.S.]," thus establishing the

vessel's true allegiance. *Rodriguez v Solar Shipping Ltd.,* 169 F. Supp. 79, 81 (S.D.N.Y. 1958). The fact that the "Capt. Wallace" was under a bareboat charter to SBM does not in itself work to absolve Sahlman or BG of any potential liability. On the memoranda prepared by the parties, there is a disputed issue as to whether Sahlman ever completely relinquished the essential "possession, command and navigation" to SBM. *Guzman v Pichirilo,* 369 U.S. 698, 699 (1962).

Viewing the totality of circumstances in the instant case, the court gives considerable weight to the factors of law of the flag (U.S.), allegiance of defendant shipowner (U.S., through a Cayman corporation), law of the forum (U.S. maritime) and defendants' base of operations (Tampa, Florida). These factors establish that the defendants have substantial contacts with the U.S., and that the U.S. has an interest in this action. Because of the weight of these factors, and because the defendants have not presented evidence sufficient to counterbalance them, the court finds U.S. maritime law is the proper law to apply in this action.

## FORUM NON CONVENIENS

On the federal side, the doctrine of forum non conveniens ("FNC") has generated a certain amount of controversy among scholars. *See,* e.g., Edelman, *Forum Non Conveniens: Its Application in Admiralty Law,* 15 J. Mar. Law & Comm. 517 (1984) and Stein, *Forum Non Conveniens and the Redundancy of Court Access Doctrine,* 133 U. of Penn. L. Rev. 781 (1985). The continuing argument is whether FNC is a rule of decision (Substantive) or a rule of venue (procedural). If it is substantive, then federal maritime law applies; if procedural, then state law controls. In diversity cases, federal courts with few exceptions follow state FNC rules. *See Sibaja v Dow Chemical Co.,* 787 F.2d 1215 (11th Cir. 1985).

The United States Supreme Court, while not ruling directly on this issue, has stated in a Jones Act context: "Federal forum non conveniens principles simply cannot determine whether Texas courts, which operate under a broad 'open courts' mandate, would consider themselves an appropriate forum for petitioner's lawsuit." *Chick Kam Choo v Exxon Corp.,* 108 S.Ct. 1684, 1690 (1988). The Court then hinted that federal FNC principles may pre-empt state rules in the maritime sphere: "It may well be that respondents' reading of the pre-emptive force of federal maritime forum non conveniens determinations is correct. This is a question we need not reach and on which we express no opinion." *Id.* at 1691.

This court need not attempt to foresee which position the Supreme

Court will ultimately adopt. The court finds that the defendants' motion to dismiss for forum non conveniens lacks merit on either state or federal grounds. Under state FNC principles, the action cannot be dismissed if one of the parties is a resident of Florida. *Houston v Caldwell,* 359 So.2d 858, 861 (Fla. 1978) ("If venue has been properly established because one of the parties is a resident of this state, then the suit may not be dismissed because another state may be more appropriate.") Because Sahlman and BG are Florida corporations, the action cannot be dismissed under state FNC principles.

Under federal maritime FNC standards, the court will normally keep any case once it decides that U.S. law applies. *Ali v Offshore Oil Co.,* 753 F.2d 1327 (5th Cir. 1985). The FNC analysis is used when the court must decide whether to keep the case and apply the law of a foreign jurisdiction or to send the case to a more convenient forum. *See Vlachos v M/V Proso,* 637 F. Supp. 1354 (D. Md. 1986) (District court kept the case and applied foreign law); *Cruz v Maritime Co. of Philippines,* 549 F. Supp. 285 (S.D.N.Y. 1982), aff'd 702 F.2d 47 (2d Cir. 1983) (American resident alien injured in U.S. waters had suit dismissed for FNC because of preponderance of Filipino contacts.)

Dismissal on the basis of FNC assumes there is an alternative forum in which the suit can be prosecuted. Defendants in the instant suit have not made any showing that Ali has an alternate and more convenient forum. Nor have they shown what type of relief could be obtained in the supposedly more convenient court. The Eleventh Circuit, in finding that a district court abused its discretion in granting a motion for dismissal on FNC grounds, stated:

> Since it is axiomatic that the burden of making a showing sufficient to justify the district court's refusal to retain jurisdiction rests on the moving part, it was incumbent on counsel to come forward with evidence in support of its assertions. Failing that, the district court abused its discretion in dismissing the lawsuit. *La Seguridad v Transytur Line,* 707 F.2d 1304 (11th Cir. 1983).

As this action now stands, the court can only speculate what witnesses and documents might be material and where they might be located. In addition, there is nothing to show that Ali has an adequate remedy if he is sent to the courts of Grand Cayman or Guyana.

Because of the lack of competent evidence concerning an alternate forum, and because two of the parties to this action are Florida corporations, there is no basis on which to grant a motion for dismissal based on FNC.

111

## CONCLUSION

For the foregoing reasons, it is hereby

ORDERED AND ADJUDGED:

Defendants' Motions to Quash Service of Process and/or Grant Summary Judgment is DENIED.

DONE AND ORDERED in Chambers this 19th day of June, 1989, at Tampa, Hillsborough County, Florida.