Darrell F. DELANEY and
Kathleen Delaney

v.

MERCHANTS RIVER TRANSPORTA-
TION, Marine Equipment Management,
Hillman Barge & Construction Co.,
HBC Barge, Inc. and Insurance Co. of
North America.

Civ. A. No. 90–2505.

United States District Court,
W.D. Louisiana,
Lake Charles Division.

July 26, 1993.

Jennings B. Jones, Jr., Cameron, LA, for plaintiffs.

Hunter W. Lundy, Lake Charles, LA, Michael G. Lemoine, John A. Jeansonne, Jr., Lafayette, LA, for defendants.

### MEMORANDUM RULING

EDWIN F. HUNTER, Jr., Senior District Judge.

Presently before the Court is defendant, HBC Barge, Inc.'s ("HBC") Motion for Summary Judgment.

This marine personal injury case stems from events that transpired aboard the Hopper Barge MOM 7208 on September 23, 1988. Plaintiff was working for Lake Charles Carbon, as an operator, when he fell in the hopper compartment of Barge MOM while ascending a portable ladder that had been lowered by a co-employee. The barge was owned by MEMCO, a Delaware Corporation authorized to do and doing business in the State of Louisiana. The action was commenced against MEMCO, in the 14th Judicial District Court, Calcasieu Parish, State of Louisiana. It was filed on July 16, 1990, and subsequently removed to this court.

The Lake Charles Carbon crew had unloaded most of the coke from the barge, and at some point between 11:00 p.m. and 1:00 a.m., the amount of coke was reduced to a level in the bottom of the barge that prevented the crane's bucket from scooping the remaining coke. The crew placed a sling around a payloader and lowered it by crane into the barge so that the coke remnant could be pushed into a pile to allow the crane's bucket to complete the unloading process.

After the payloader was placed into the barge, an aluminum ladder owned by Lake Charles Carbon was procured and placed into the hole at the northwest corner of the barge. The plaintiff stepped onto the lip of the barge and then onto the ladder, and descended the ladder into the barge. An employee securely held the top of the ladder while plaintiff descended it to the bottom. The ladder was then placed dockside and plaintiff began operating the payloader, pushing the coke into a pile. The payloader was then connected to the sling and lifted from the barge.

The aluminum ladder was again lowered into the barge. The plaintiff placed the bottom of the ladder on the floor and leaned the top at an angle against the lip of the barge. After climbing approximately six rungs, the ladder, apparently unsecured, shifted toward the east causing Delaney to fall to the floor of the barge. It is alleged that he sustained injuries to his wrist and neck.

The owners of the barge filed a motion for summary judgment. The motion was granted. The Fifth Circuit affirmed. 968 F.2d 17 (1992).[1] On September 19, 1991, approximately three years after the alleged accident, plaintiff filed an amended petition naming HBC Barge, Inc. as a defendant.[2]

HBC Barge, Inc. was a Pennsylvania corporation domiciled in Brownsville, Pennsylvania, and was in the business of manufacturing open-hopper coal and grain barges for use in inland waterways.

In 1971–1972, HBC Barge, Inc., pursuant to a contract with Findlay Towing Company, Inc., and Tuscaloosa Barge Line, Inc., manufactured ten 195–foot by 12–foot semi-integrated open hopper coal barges. The ten barges were not equipped with permanent ladders in the hopper compartments.

Findlay Towing Company, Inc., and Tuscaloosa Barge Line, Inc., requested certain changes to the basic design of the barges during construction. These requests were complied with. Findlay Towing Company, Inc., and Tuscaloosa Barge Line, Inc., did not desire the placement of permanent ladders in the hopper compartments of these barges. Experience had demonstrated that the ladder would interfere with the loading and unloading of coal by way of mechanized means, i.e., cranes, buckets, and loaders. Also the ladder would in all likelihood become damaged or destroyed during such loading/unloading operations.

Findlay Towing Company, Inc., and Tuscaloosa Barge Line, Inc., operated these ten barges from 1972 until 1987. They were then sold to Marine Equipment Management Corporation (MEMCO).

In September, 1988, MEMCO contracted with Lake Charles Carbon for the unloading of the hopper barge MOM 7208, one of the original ten barges manufactured by HBC.

---

1. A copy of the opinion is attached. [Editor's Note: Opinion deleted for publication purposes.]

2. Plaintiff's employer, Lake Charles Carbon, is indisputably obliged to pay compensation to him.

They have done so, and have now intervened seeking recovery of the compensation benefits that they have been paying since the accident.

## PERSONAL JURISDICTION OVER HBC

On November 18, 1993, HBC's Motion to Dismiss was denied. The court concluded that under the "Stream of Commerce" theory, personal jurisdiction was properly asserted. We denied HBC's motion to amend our ruling to permit an immediate appeal. It is certainly true that a substantial basis exists for a difference of opinion on the jurisdictional issue. We are tempted to review the issue. However, we will abstain, since that ruling will now be subject to appeal along with other rulings made today.

## LOUISIANA LAW VS. MARITIME LAW

Defendant argues that this case lacks the requisite maritime nexus to impose maritime jurisdiction and maritime law on HBC, and that Louisiana law is applicable. If that is in fact the case, then the one year prescriptive period for delictual actions has run, and Delaney's claim against HBC has prescribed.

■ This circuit applies a two-part inquiry to determine the presence of maritime jurisdiction. *Molett v. Penrod Drilling Co.,* 872 F.2d 1221 (5th Cir.), *cert. denied* by *Columbus—McKinnon, Inc. v. Gearench, Inc.,* 493 U.S. 1003, 110 S.Ct. 563, 107 L.Ed.2d 558 (1989). "That inquiry is essentially factbound, turning on a determination of the location of the tort, the situs factor, and the pertinent activity, the nexus factor." *Molett, supra;* (citing, *Richendollar v. Diamond M. Drilling Co.,* 819 F.2d 124, 127 (5th Cir.) (en banc), *cert. denied,* 484 U.S. 944, 108 S.Ct. 331, 98 L.Ed.2d 358 (1987)). Since the accident occurred on navigable water, we need only consider the nexus prong.

■ In *Kelly v. Smith,* 485 F.2d 520 (5th Cir.1973), *cert. denied,* by *Chicot Land Co. v. Kelly,* 416 U.S. 969, 94 S.Ct. 1991, 40 L.Ed.2d 558 (1974), the Fifth Circuit listed the factors to be considered in determining whether a claim invokes the admiralty jurisdiction of the federal courts. The factors include: "1) the functions and rules of the parties; 2) the types of vehicles and instrumentalities involved; 3) the causation and type of injuries; and 4) the traditional concepts and role of admiralty law." *Kelly,* 485 F.2d at 525. Applying the factors to the case at hand, we conclude that this matter arises under this Court's maritime jurisdiction. It is important to note that at least a portion of Delaney's duties included loading and unloading barges. Furthermore, HBC was in the business of designing, manufacturing and selling barges, which clearly has an effect on maritime commerce. It is also vital to emphasize that the accident occurred on a barge in navigable waters. The essential questions in this case concern whether the barge should have been equipped with a built-in ladder, or a built-in cleat to secure a portable ladder. Moreover, the type of accident suffered by the plaintiff (falling off a ladder) is the sort of injury common to the maritime environment. Seamen constantly move around ships and barges, and must traverse from one level of the vessel to another. This is clearly the type of injury which invokes the usual concepts of maritime law. The case arises under this Court's admiralty jurisdiction.[3]

## · SUMMARY JUDGMENT

Summary Judgment is "to be rendered if the pleadings, depositions, interrogatories, and admissions on file, together with affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *If the summary judgment evidence could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.*

The pivotal issues in this case are (1) whether there was a defect in the barge's design; and (2) even if there was a design defect, was it a cause of plaintiff's injury.

## MARITIME LAW

■ The Supreme Court has described federal maritime law as an, "amalgam of

---

**3.** See, *Employers Ins. of Wausau v. Suwannee River Spa Lines, Inc.,* 866 F.2d 752, 760 (5th Cir.) *cert. denied,* 493 U.S. 820, 110 S.Ct. 77, 107 L.Ed.2d 43 (1989); affirmed after remand, 978 F.2d 1422 (5th Cir.1992); petition for *cert.* filed May 11, 1993. (Court held that in admiralty, where subject matter jurisdiction is intertwined with the merits, the district court should assume jurisdiction and proceed to the merits).

traditional common law rules, modifications of those rules, and 'newly created rules' drawn from state and federal sources". *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986). Strict product liability is part of the general maritime law. *Ali v. Offshore Co.*, 753 F.2d 1327, 1332 n. 11 (5th Cir.1985), *cert. denied* in *Crowley Maritime Corp. v. Zipfel*, 486 U.S. 1054, 108 S.Ct. 2819, 100 L.Ed.2d 921 (1988); *forum non conveniens* holding overruled by *In re Air Crash Disaster Near New Orleans, LA.*, 821 F.2d 1147 (5th Cir.1987), (a products liability claim within admiralty jurisdiction is governed by federal maritime law). In developing this law, courts have consulted state laws, see *Louisiana ex rel. Guste v. M/V Testbank*, 752 F.2d 1019, 1031 (5th Cir.1985) (en banc); *cert. denied* in *White v. M/V Testbank*, 477 U.S. 903, 106 S.Ct. 3271, 91 L.Ed.2d 562 (1986); and also the Restatement of Torts. (Restatement § 402A is the "best and most widely-accepted expression of the theory of strict liability"); *Vickers v. Chiles Drilling Co.*, 822 F.2d 535 (5th Cir.1987). With this framework in mind we address Delaney's claim against HBC.

## DEFECTIVE DESIGN

In this case, the Fifth Circuit decision in its unpublished opinion of July 7, 1992, held that there was no legal duty by MEMCO, the barge owner, to provide a permanently fixed ladder on the barge. They asserted categorically that the lack of a permanently affixed ladder was *not* a hidden danger. See also *Ducote v. International Operating Company*, 678 F.2d 543 (5th Cir.1982), (where, "the employer, the independent ... contractor, alone had the responsibility to furnish such ladders for temporary use in its cleaning operations").

The Restatement (Second) of Torts § 402A ("4, 6 402A") provides:

1) one who sells any product in a defective condition unreasonably dangerous to the user ... is subject to liability for physical harm thereby caused to the ultimate user ... if

(a) the seller is engaged in the business of selling such a product, and

(b) [the product] is expected to and does reach the user ... without substantial change in the condition in which it is sold.

## PLAINTIFF'S EXPERT EVIDENCE AND THEORIES OF DEFECTIVE DESIGN

The Supreme Court addressed the standard to be applied in *Daubert v. Merrell Dow Pharmaceuticals*, — U.S. —, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Here, there is a specific Rule that speaks to the contested issue. Rule 702, governing expert testimony, provides:

"If scientific, technical, or other specialized knowledge *will assist the trier of fact to understand the evidence or to determine a fact in issue,* a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

Expert evidence can be quite misleading if it would not assist the trier of fact in determining an issue. The opinions offered by plaintiff's experts would not help a jury in understanding the evidence or determining a fact in issue. Here causation is a major issue and is not resolved in any way by plaintiff's expert.

Plaintiff's expert, Mr. Suda, had limited experience in the design of inland, open barges. At his deposition, Mr. Suda could specifically remember designing only one inland, open barge. Furthermore, Mr. Suda opined that the barge was defective in one of three ways:

1) Failure to incorporate a fixed ladder to the wall of the barge;

2) Failure to manufacture a portable ladder which would accompany the barge; and/or

3) Failure to provide cleats under the coaming of the barge which would help to secure portable ladders not specifically designed for the barge.

We find that no rational trier of fact could conclude that these alleged omissions resulted in a defective condition which constituted an unreasonable danger to the user.

### 1) *Failure to Incorporate a Fixed Ladder*

The question for the Court is whether the failure to include a fixed ladder posed a defect in the design. Mr. Averite, a union manager for MEMCO, testified that out of 360 barges operated by MEMCO, not one *hopper* barge contained a permanently affixed ladder. Also, Mr. Averite considered permanently affixed ladders to be a liability, since the ladders frequently became damaged, and were ineffective. Even plaintiff admits in his deposition that in his experience, the ratio of barges with fixed ladders versus barges without ladders, was about 50/50. Delaney also admitted that of the barges which contained a ladder, most were damaged. Furthermore, it is relevant to note that the original user of the hopper barge, did not want a permanent ladder affixed to the barge. We conclude that there was ample justification for not including a permanent ladder in the barge, and that the decision did not result in a design defect.

### 2) *Failure to Include a Portable Ladder*

Alternatively, Mr. Suda contends that the barge is defective due to the failure to include a *portable* ladder. However, Mr. Suda admits that he has never seen a portable ladder included with a barge. Also, it is extremely unlikely that a ladder would remain with the barge during the barge's lifetime. At the time of the accident, the barge was seventeen years old. Neither we, nor a rational juror, could conclude that the barge was defective merely because the design did not include a portable ladder, which may not even have survived the barge's *first* voyage.

### 3) *Failure to Install a Ladder Cleat*

Mr. Suda finally alleges that the barge was defective since it did not provide a ladder cleat in which to attach a land-based portable ladder. Mr. Suda admits that land-based portable ladders are perfectly safe provided that they are properly secured by ropes or clips attached to cleats. Yet, the barge contained a mooring cleat, which Mr. Suda admits would have been sufficient to attach a rope to secure the ladder. Therefore, the

failure to include a cleat specifically designed to secure a portable ladder was not a defect in this situation, where there were other cleats which were more than adequately suited to complete the same task. Furthermore, even if the failure to specifically design a cleat for the ladder was a defect, that defect was not a cause-in-fact of plaintiff's injury. The workers did not even try to secure the ladder to the cleat, nor was it the policy of the company to do so.[4]

### CAUSATION

In discussing the issue of causation, the court must consider the true cause of the accident, i.e., Delaney slipping off the ladder due to his boots being wet and/or the carelessness of himself and his co-employee, Morris Louis Charles. An analysis of the record makes it abundantly clear that the plaintiff has failed to establish his burden of proof that any of the alleged design defects was a proximate or legal cause of this accident.

When Delaney was approximately halfway up the ladder (6–8'), the ladder allegedly "shifted" to the right, causing him to fall. However, when questioned, Delaney could not testify as to how far the ladder shifted, i.e., one inch, one foot, two feet, etc. On the other hand, Morris Louis Charles testified that the ladder shifted no more than one inch. Most importantly, Mr. Charles could not testify as to whether or not the ladder shifted before, during, or after Delaney fell. It is reasonable to assume that if he had slipped off the ladder for reasons other than it shifting, the ladder would have shifted slightly (one inch) due to the weight of Delaney falling off the ladder.

There are several explanations based upon the evidence as to why Delaney fell off the ladder, none of which are associated with any alleged design defects of the barge. The two most probable explanations are that Delaney's boots were wet, causing him to slip off the rungs of the ladder; and/or the ladder was placed on a piece of coke instead of the flat bottom of the barge. Delaney testified that there was water in the barge (it is an open hopper barge) and he had to step in this

4. This will be discussed *infra* in more detail.

water en route to the ladder. In fact, after his fall, there was water all over his clothes. Delaney admits that as he was climbing up the ladder, his right foot did slip, and he admits that it could have slipped because his boot was wet. Delaney's accident would have happened even if the ladder was secured with rope or if he was climbing up a fixed ladder, particularly in light of the testimony of Morris Louis Charles that he cannot remember if the ladder shifted one inch before, during or after the fall.

Relevant in this regard is the Lake Charles Carbon "Supervisor's Report of Accident Investigation". This report was prepared shortly after the accident by Delaney's supervisor on duty that night. There was no mention to the supervisor of the ladder shifting; the only explanation given to the supervisor as to the cause of the accident was that Delaney had slipped off the ladder because his boots were wet. The accident report states the following:

> The barge MOM 7208 had water inside and Mr. Delaney's boots were wet. When he was climbing up the ladder, the bottom of his boots were wet and that what cause him to slipped (sic).

> Mr. Delaney's boots were wet and he should have been more careful while climbing up the ladder.

(Exhibit P, Excerpts of Deposition of John Louviere, pp. 10, 18, 19–24).

In addition to Delaney's boots being wet, it appears that he and Morris Louis Charles failed to make sure that the ladder feet were resting on the solid bottom of the hopper compartment. Delaney specifically testified in his deposition that he feels he fell because the ladder had been placed on a piece of coke that broke as he climbed up the ladder. His testimony in this regard is worth quoting:

> "Right. You see, as you can see in the pictures of the barge, you've got material left and when you place these portable ladders, if you happen to get one of the legs of the ladder on this material, now I'm not positive, but I think that's what happened to me. That this piece of coke broke, and that what's made the ladder move a little." (Exh. E, p. 63)

In light of this testimony, it is beyond doubt that Delaney violated the Lake Charles Carbon safety directive in failing to "make certain that the ladder feet are resting on a solid surface." It also appears that Morris Louis Charles violated this procedure. Mr. Charles testified that at the time of the accident when the ladder shifted (although he cannot say if it was before, during or after Delaney fell), it appeared like one foot of the ladder "leaned a bit." Although he felt that perhaps the foot of the ladder was in a depression on the hopper floor, he admits that Delaney could have repositioned the ladder before climbing up on it to make sure it was resting on a flat area. This, of course, was the procedure outlined by Mr. Royer, the safety supervisor of Messrs. Delaney and Charles. In fact, Mr. Charles stated that when he climbed down the ladder to help Delaney back up, he repositioned the ladder at a different angle and placed it on a flat area of the barge and ascended without problem.

The true cause of this accident was the negligence of Delaney and Morris Louis Charles in failing to properly place the ladder at a safe angle and on a flat surface, combined with the fact that Delaney's boots were wet. To suggest that the accident was caused by a design defect in the barge stretches one's legal imagination.

With respect to the custom-fit portable ladder, again the original owner of the barge did not request this, and it is sheer speculation on the part of Mr. Suda to opine that this ladder would still be with the barge 17 years after its original manufacture. We also find that any alleged defects in the barge was not a cause-in-fact of Delaney's accident.

In discussing the issue of causation, it is necessary also to address the responsibility of Lake Charles Carbon regarding the provision of proper means of ingress/egress to the inland barges. Although the negligence or fault of Lake Charles Carbon cannot be assessed by the jury, it most certainly can be considered in determining whether it was the sole and proximate cause of the accident, and whether or not any legal duty on the part of HBC was breached with respect to Delaney.

In this regard, it was established in the Motion for Summary Judgment filed by MEMCO as affirmed by the U.S. Fifth Circuit Court of Appeal, that Lake Charles Carbon had the legal duty and sole responsibility to furnish ladders for temporary use in the unloading process of the barge in question. This finding was based upon the U.S. Fifth Circuit Court of Appeal decision of *Ducote v. International Operating Company.*, 678 F.2d 543 (5th Cir.1982), in which the court held that:

> And no factual or legal reason supports Ducote's contention that (vessel owner) was under a duty to equip the barge with permanent ladders, or temporary-type ladders that were safe, when Burnside, the independent cleaning contractor, alone had the responsibility to furnish such ladders for temporary use in the cleaning operations. . . .

■ With respect to the causation issue, the Restatement of Torts, Sec. 402A, requires that to show a product is "unreasonably dangerous", it must be shown that it is "dangerous to an extent beyond that which would be contemplated by the ordinary consumer." Or, stated another way, the product is not defective if "safe for normal handling and consumption." The law places the sole responsibility to provide proper ladders for ingress/egress into barges upon the longshoreman's employer, in this case Lake Charles Carbon. The lack of a permanent ladder or a custom-fit ladder in 1972 was clearly not a cause of plaintiff's fall. The barge was not defective in design or construction.

## CONCLUSION

We conclude that the lack of a permanently affixed ladder, a sea-based portable ladder, or a cleat to secure a land-based portable ladder, does not render the barge unreasonably dangerous, as evidenced by the record and affidavits. The normal use of this type of hopper barge is without permanently affixed ladders, since they are either lacking such appurtenances, or the ladders are dam-

aged to the extent rendering them unsafe for use. The barge is "safe for normal handling and consumption" as defined by Sec. 402A of the Restatement. In any event, an analysis of the record makes it abundantly clear that the alleged design defects were not a cause of this accident. There is no genuine issue in dispute concerning these material facts. Accordingly,

HBC's Motion for Summary Judgment is GRANTED.[5]

THUS DONE AND SIGNED.

## JUDGMENT

In consideration of the foregoing ruling, Summary Judgment is hereby entered in favor of HBC Barge, Inc. and against Darrell F. Delaney and Kathleen Delaney.

Accordingly, plaintiffs' claims against HBC Barge, Inc. are DISMISSED.

Furthermore, the claims of intervenor, Insurance Co. of North America, are also DISMISSED.

The case is closed.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana on this 26th day of July, 1993.

---

**5.** Plaintiff has also filed a motion for summary judgment. Both parties have filed briefs in support of their respective positions. In light of this ruling, however, plaintiff's Motion for Summary Judgment is DENIED.