I2THOMAS W. TANNER, Judge Pro Tem.
This is an appeal from a judgment of the Sixteenth Judicial District Court granting summary judgment in favor of the defendant, Robicheaux Air Boats, Inc. (hereinafter “Ro-bicheaux”) dismissing plaintiffs’ Jones Act claims as to that defendant on a finding that the plaintiff, Russell Coleman, was not an employee of Robicheaux.
During August of 1991, Shell Western E & P, Inc. (hereinafter “Shell”)[3] was conducting seismographic exploration work in Black Bayou near Sulphur, Louisiana. Shell obtained laborers, including Russell Coleman, for the work being conducted from Shot Point Service, Inc. (hereinafter “Shot Point”), plaintiffs employer. Shell obtained air boats and air boat drivers for the operation from Robicheaux. Plaintiff was a member of a crew that was responsible for laying and removing geophones and lines at designated survey sites across the marshland. Mr. Coleman’s crew worked off of an air boat owned and driven by a Robicheaux employee, but which had been leased to Shell. On August 17,1991, Mr. Coleman lost his footing and fell while standing in the air boat, and claims he injured his neck and back. Plaintiffs assert in their petition that since Mr. Coleman was working on a vessel, he was a member of the crew of that vessel and therefore has seaman status with regard to the vessel owner, Robicheaux, which entitles plaintiffs to Jones Act remedies.
From the lower court judgment granting Robicheaux’s Motion for Summary Judgment, plaintiffs appeal asserting the following errors:
(1) The Trial Court erred by failing to give written reasons for judgment.
(2) The Trial Court improperly granted a partial summary judgment.

ASSIGNMENT OF ERROR NUMBER (1)

Plaintiffs argue initially that the trial court is required by La.C.C.P. art. 1917 to file written reasons for judgment, and that lathe oral reasons assigned by the court did not comply with the statutory requirements. Article 1917 provides, in pertinent part:
In all appealable contested cases, other than those tried by a jury, the court when requested to do so by a party shall give in writing its findings of fact and reasons for judgment, provided the request is made not later than ten days after the signing of the judgment.
Plaintiffs filed their request for written reasons together with their petition, far in advance of the rendition of the judgment. However, we do not find it necessary to address whether a request for written reasons is properly filed prior to either the hearing or judgment rendered thereafter, as we believe the trial court issued adequate reasons for judgment. “Reasons for Judgment” were filed by the trial court which stated, in pertinent part:
This matter was heard on December 3, 1993 on Motion for Summary Judgment on the issues of absolute liability and loss of consortium filed by defendant, Robicheaux *1334 Airboats, Inc. The Court pretermitted a ruling on this motion until after it heard a second set of related motions in January, 1994, in order to issue a consolidated set of Reasons for Judgment on all motions. As it happens, however, the Court ruled from the bench on all three issues presented in the second set of motions argued on January 31,1994. Specifically, the Court found that (1) the plaintiff, as a matter of law, was not a Jones Act seaman; (2) that plaintiffs motion for the protective order seeking to limit discovery by defendant Robicheaux Airboats, Inc., to one attorney/law firm was moot in light of the Court’s ruling on the seaman statu[s] issue; and (3) that defendants’ alleged affirmative defense of “failure to state a claim upon which relief can be granted” would be stricken from the answer and heard in limine as an Exception of No Cause of Action....
[[Image here]]
... As noted above, the Court has previously found, as a matter of law, that the plaintiff is not a seaman for purposes of the Jones Act as to defendant, Robicheaux Airboats, Inc. ... The Court ruled that the plaintiff is not a seaman as to Robi-cheaux Airboats, Inc. under the Jones Act solely because of a lack of an employer/employee relationship between the plaintiff and Robicheaux Airboats, Inc. ...
Thus, the trial court has stated, though summarily, its reasons for judgment.

ASSIGNMENT OF ERROR NUMBER (2)

Plaintiffs argue that depositions apparently relied on by the trial court in rendering summary judgment were merely excerpts rather than complete transcripts and therefore should not have been considered by the trial court. Plaintiffs further argue that a Uquestion of fact remained as to Mr. Coleman’s seaman status, and notwithstanding, the grant of a partial summary judgment isolates and dismisses only one of several theories of liability and as such is piecemeal litigation.
At the outset, we reject appellants’ arguments with regard to the admissability of the deposition testimony before the trial court on this motion for summary judgment. Excerpts of depositions filed into the record may properly be considered by the trial court in ruling on a motion for summary judgment even though the entire transcript of the deposition was not filed. Barnett v. Staats, 25,357 (La.App. 2d Cir. 1/19/94), 631 So.2d 84. See also Johnson v. Slidell Memorial Hospital, 552 So.2d 1022 (La.App. 1st Cir. 1989), writ denied, 558 So.2d 571 (La.1990). As noted by the Barnett court, this use of deposition excerpts is in accordance with La. C.C.P. art. 1450. 631 So.2d at 87. Should a party desire to have additional portions of such a deposition presented to the court, the proper remedy is in accordance with La. C.C.P. art. 1450(A.)(4). As in Barnett, apparently appellants did not complain about the use of deposition excerpts in the trial court. Furthermore, each of the deposition excerpts is independently stamped filed by the clerk of the trial court avoiding the result reached in Placid Refining Company v. Privette, 523 So.2d 865 (La.App. 1st Cir.), writ denied, 524 So.2d 748 (La.1988), where depositions were merely attached to memoranda and not properly filed into the record. Hence, the deposition excerpts in the instant case were properly considered by the trial court.
Appellate courts review summary judgments de novo under the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La. 1991). Summary judgment under La.C.C.P. art. 966 is available only when the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to a material fact, and that the mover is entitled to judgment as a matter of law. La.C.C.P. art. 966; Thompson v. South Central Bell Telephone Com *1335 pany, 411 So.2d 26 (La.1982); Dixie Campers, Inc. v. Vesely Company, 398 So.2d 1087 (La.1981); Chaisson v. Domingue, 372 So.2d 1225 (La.1979). All doubt concerning dispute as to a material issue of fact must be resolved against granting the motion for summary judgment and in favor of trial on the merits. Penalber v. Blount, 550 So.2d 577 (La.1989); Lytell v. Goodyear Tire & Rubber Co., 439 So.2d 542 (LaApp. 1st Cir.1983); Gulf-Wandes Corporation v. Vinson Guard Service, Inc., 393 So.2d 207 (La.App. 1st Cir.1980), writ denied, 397 So.2d 1359 (La. 1981).
The initial determination, on motion for summary judgment, is whether the supporting documents presented by the moving party are sufficient to resolve all material issues of fact; if they are not sufficient, summary judgment should be denied. It is only if they are sufficient that the burden shifts to the opposing party to present evidence that a material fact is still at issue; only at this point may the adverse party no longer rest on the allegations contained in his or her pleadings. Robertson v. Our Lady of the Lake Regional Medical Center, 574 So.2d 381 (LaApp. 1st Cir.1990), writ denied, 573 So.2d 1136 (La.1991); Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772 (La.1980); Frazier v. Freeman, 481 So.2d 184 (La.App. 1st Cir.1985); Nathans v. Vuci, 443 So.2d 690 (LaApp. 1st Cir.1983).
The facts of this case reveal that Russell Coleman was employed by Shot Point. Mr. Coleman testified that he was hired by Shot Point employees and that he received his paycheck from Shot Point. This scenario is complicated by the fact that Shot Point sent Mr. Coleman to work for Shell on a Shell seismographic exploration operation, and by the fact that while doing this job, Russell Coleman worked off of a Robicheaux owned and operated boat.
Only an employer can be liable under the Jones Act. Youn v. Maritime Overseas Corp., 605 So.2d 187 (La.App. 5th Cir. 1992), set aside in part on other grounds (on damages), 623 So.2d 1257 (La.1993), cert. denied, — U.S. —, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). See also Symeonides v. Cosmar Companía Naviera, S.A., 433 So.2d 281, 288 (La.App. 1st Cir.), writ denied, 440 So.2d 731 (La.1983), cert. denied, 465 U.S. 1079, 104 S.Ct. 1442, 79 L.Ed.2d 762 (1984). However, for purposes of recovery under the Jones Act, it may be possible for a seaman to have more than one Jones Act employer. Youn, 605 So.2d at 200. Thus, if Russell Coleman can be considered the “borrowed employee” of either Shell or Robicheaux, he has a remedy for his injuries against that party. However, at issue for purposes of this appeal is Russell Coleman’s relationship to Robicheaux only.
The Youn court stated that in determining who is an employer for recovery under the Jones Act, “control” is the critical inquiry, quoting Volyrakis v. M/V Isabelle, 668 F.2d 863 (5th Cir.1982):
Factors indicating control over an employee include payment, direction, and supervision of the employee. Also relevant is the source of the power to hire and fire. The control which is exercised must be substantial; the mere possibility of some control over the actions of an employee will not suffice to find an employer-employee relationship.
The testimony presented by deposition in the instant case reveals that none of these control factors existed between Mr. Coleman and Robicheaux. In addition to Russell Coleman being hired and paid by Shot Point, when asked whether he worked for Robicheaux Air Boats he answered, “No.”[4] Mr. Coleman further testified that Robicheaux did not direct him as to what tasks to perform; however, on some occasions, the Robicheaux air boat driver would relay messages which came over the radio *1336 from Shell or Shot Point employees. Mr. Coleman testified that he met with Shell employees each morning who told him what to do; he stated that the Shell men were the bosses. Mr. Coleman also testified that although Shell had the power to have him fired, Robicheaux did not.
Adolfo Canales testified that he was Russell Coleman’s co-worker aboard the Robi-cheaux air boat. Mr. Canales testified that he was an experienced helper employed by Shot Point, and working for Shell. Mr. Ca-nales was assigned to train Russell Coleman. Mr. |7Canales stated emphatically that of the three men on the air boat in question (himself, Russell Coleman and the Robicheaux driver), “I was in charge of that boat.” Mr. Canales testified that the Robicheaux driver’s only responsibility was to drive the boat; he could give directions to Mr. Canales and Russell Coleman only as to where to sit, stand or hold onto the boat when it was moving fast. Mr. Canales repeatedly reiterated that he was in charge of the operations on that boat, including the driver. Mr. Ca-nales further testified that he and Russell Coleman took orders only from Shell or Shot Point personnel. Ray Robicheaux testified that Russell Coleman never worked for his company.
Monnie Boyd, an official with Shot Point, testified that Shell set out the chain of command on the job. She stated that Robi-cheaux did not have the authority to fire Russell Coleman. William Franklin Parker was deposed as the Shell representative. Mr. Parker testified that Shot Point and Robicheaux each paid its respective employees, but that Shell could recommend to those companies that any employee be fired. Mr. Parker also stated that Shot Point personnel selected and hired its employees. Further, Mr. Parker stated that Greg Henderson was the Shot Point representative and supervisor on the job site. The written contract between Shell and Shot Point was introduced into evidence as an attachment to Mr. Parker’s deposition, and “Exhibit C” to the contract sets forth the responsibilities of the “Contract Employee Supervisor”:
The Contract Employee Supervisor is the Shot Point Service Inc. supervisor for all Shot Point Service Inc. employees on the seismic crew. The responsibilities of this person would include:
1. Accept job applications and conduct interviews for prospective employees.
2. Hire and discharge contract laborers to maintain appropriate manpower levels as determined by the SWEPI [Shell Western E & P, Inc.] Party Supervisor.
3. Handle all administrative requirements of the contract personnel including time sheets, salaries and per diem, accident reporting, insurance, etc.
|⅜4. Handle all contract employee grievances, salary negotiations, disciplinary actions, workers’ compensation claims, etc.
5. Assure that all contract employees are performing their assigned tasks in a safe, efficient, and appropriate manner.
6. Assure that contract employees are made aware of and comply with SWEPI safety policies and guidelines.
7. Assure that Shot Point Service Inc. is in compliance with all federal, state and local labor laws.
In order to effectively assume the above responsibilities, it is expected that the contract supervisor would spend considerable time in the field monitoring the work performance of the contract employees. His presence in the field would also assure that the working relationships specified in the contract are maintained. Close communication with the SWEPI supervisor will be most important.
These facts clearly show that Robicheaux exercised no control over Russell Coleman which would lead to a borrowed employee situation. Therefore, the trial court was correct in finding no question of fact remained that Robicheaux was not the employer of Russell Coleman.
*1337 We likewise find no merit in appellants’ remaining argument that summary judgment was improperly granted since it did not grant all or part of the relief for which the mover has prayed contrary to La.C.C.P. art. 966. The articles of the Code of Civil Procedure pertinent to this discussion are La.C.C.P. 966 and La.C.C.P. art. 1915 which provide, in pertinent part:
Art. 966. Motion for summary judgment; procedure
A. The plaintiff or defendant in the principal or any incidental action, with or without supporting affidavits, may move for a summary judgment in his favor for all or part of the relief for which he has prayed_ [Emphasis added.]
Art. 1915. Partial judgment
A. A final judgment may be rendered and signed by the court, even though it may not grant the successful party all of the relief prayed for, or may not adjudicate all of the issues in the ease, when the court:
[[Image here]]
(3) Grants a motion for summary judgment, as provided by Articles 966 through 969....
Although in Landry v. John E. Graham & Sons, Inc., 533 So.2d 975 (La.App. 1st Cir.), writ denied, 534 So.2d 431 (La.1988), cert. denied, 490 U.S. 1022, 109 S.Ct. 1749, 104 L.Ed.2d 185 (1989), the opposite scenario was presented, i.e., summary judgment was granted by the trial court finding seaman status, and reversed by this court on appeal. In a footnote to that decision this court stated:
We note that a defendant’s motion for summary judgment on the issue of seaman’s status is appropriate and, if granted, would in effect dismiss the plaintiffs cause of action under the Jones Act. See Beard v. Assumption Parish Police Jury, 413 So.2d 923 (La.App. 1st Cir.1982), writ denied, 420 So.2d 444 (La.1982) and Alexander v. Hudson Engineering, Inc., 378 So.2d 156 (La.App. 1st Cir.1979).
In its motion for summary judgment, Robi-cheaux moved the court “to enter a partial summary judgment in its favor, dismissing plaintiffs’ Jones Act claims against Robi-cheaux on the grounds that Russell Coleman was not Robicheaux’s employee....” We find the trial court properly granted the relief requested by Robicheaux.
For the reasons stated herein we affirm the judgment of the trial court granting summary judgment in favor of Robicheaux Air Boats, Inc., and assess all costs of this appeal to appellants herein.
AFFIRMED.

. Shell was improperly named in the petition as Shell Western Exploration and Production, Inc.

. After the accident, Plaintiff collected worker's compensation benefits from Shot Point’s insurer, Travelers Insurance Company.